**In re Charles Hasten PADGETT, Dona Jeanne Padgett, Debtors.**

**Leandra WALKER, Trustee, Plaintiff,**

**v.**

**David FINCH, et al., Defendants.**

**Bankruptcy No. 5–82–00304.**
**Adv. No. 5–83–0024.**

United States Bankruptcy Court,
W.D. Kentucky.

April 29, 1985.

Lucius P. Hawes, Jr., Hopkinsville, Ky., for trustee.

Thomas H. Bugg, Clinton, Ky., for First National Bank.

Robert Manchester, Paducah, Ky., for debtors.

Albert Jones, Paducah, Ky., for Reelfoot Bank.

J.L. Atwill, Crutchfield, Ky., for defendants.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This case is before the Court *sua sponte*, for resolution of issues concerning the validity and perfection of security interests of two banks as against the Trustee and priority between the banks, as well as the Trustee's entitlement to administrative expenses and commission.

The debtors herein, Charles Hasten Padgett and Dona Jeanne Padgett, filed a joint Chapter 7 petition on October 1, 1981. The Plaintiff in this adversary proceeding was duly appointed Trustee, and the debtors were discharged on March 10, 1982. In the debtors' petition, they listed as personal assets certain promissory undertakings, commonly denoted as "two for one contracts" whereby the debtors delivered quantities of soybeans to promisors under the contracts, upon the written promissory undertaking of the promisors to repay an equivalent of twice the quantity of soybeans delivered by the debtors, or the cash equivalent thereof, within a specific time.

Reelfoot Bank, a defendant herein, to secure certain loans made to the debtors, filed a Financing Statement and Security Agreement with the Hickman County Clerk on December 31, 1980. Paragraph 2 of the Financing Statement and Security Agreement states, in part:

The collateral covered by this agreement is all the Debtor's property described below, used in connection with Debtor's seed and grain business ..., together with all proceeds and products thereof, and includes, but is not limited to, any items listed on any schedule or list attached hereto:

b. All inventory, raw materials, work in process, returned goods, and supplies now owned or hereafter acquired.

c. All accounts receivables, accounts, notes, drafts, acceptances, and other forms of obligations and receivables nor [sic] or hereafter received by or belonging to debtor for goods sold by debtor; or for goods returned by Debtor; or for services rendered by Debtor, all guarantees and securities therefor, and all the right, title and interest of the Debtor in the merchandise which shall give rise thereto, and all rights of the Debtor earned or yet to be earned under contracts to sell, or to render services, or any other contract rights, choses in action or general intangibles, of every kind whatsoever.

First National Bank of Clinton, another defendant herein, took possession on various dates of the actual paper evidencing all

of the "contracts" contemporaneous with loans made to the debtor between March and June of 1981. The dates of taking possession of the papers are not disclosed of record, but all such takings presumably occurred after January of 1981.

■ The first issue for determination by this Court is the validity and perfection of security interests of both Banks as against the Trustee and priority status between the Banks. Before we can determine any priority status, we must first categorize the collateral to determine the perfection of the security interests of both Banks. It is clear that Reelfoot Bank was a perfected secured party as of December 31, 1980, the date of filing the Financing Statement and Security Agreement. The question is whether it's security interest includes as collateral the "two for one contracts". The Court finds that the description in the Security Agreement previously quoted is a sufficient description to include the "two for one contracts" as collateral securing the interest of Reelfoot Bank. *See,* K.R.S. 355.9–110. In particular, the "contracts" are covered by that portion of paragraph 2.c. of the Security Agreement which states "... and all rights of the Debtor earned or yet to be earned under contracts to sell, or to render services, or any other contract rights, choses in action or general intangibles, of every kind whatsoever." *See, e.g. Am. Plating & Mfg. Co. v. Liberty National Bank & Trust,* 468 F.Supp. 103 (W.D.Ky.1979); *In re Anselm,* 344 F.Supp. 544 (W.D.Ky.1972); *Mammoth Cave Production Credit Association v. York,* Ky., 429 S.W.2d 26 (1968). The "two for one contracts" were entered into in a period between March, 1981 through June, 1981, which was subsequent to the filing of Reelfoot Bank's financing statement. However, the after-acquired property clause included in the Security Agreement between the debtors and Reelfoot Bank would allow for Reelfoot's security interest to attach once the debtors had right in this collateral, which occurred when the "two for one contracts" were made, and this account, owing in either seeds or money to the debtor, came into existence. K.R.S. 355.9–204.

■ Next, we must determine the validity and perfection, if any, of First National Bank of Clinton in the "two for one contracts". Once again, in order to determine if they are properly perfected, we must first classify the collateral in which First National claims a security interest. The Court must admit to some difficulty in attempting to classify these "two for one contracts". The "contracts" obligate persons to "pay" soybeans to the debtor at an ascertainable date, or to pay an ascertainable amount of money in lieu thereof at any time prior to the ascertainable date. They are not "instruments" with the meaning of the Uniform Commercial Code. K.R.S. 355.9–105(1)(g) defines "instruments" as being "... a negotiable instrument ... or any other writing which evidences a right to payment of money ..." They are not negotiable instruments as they are payable in either money *or* property, and they appear to not be "instruments" for the same reason.

■ Without belaboring the point, and not finding any necessity to go through each possible classification of collateral and discard the same as inapplicable, the Court finds that the "two for one contracts" are "accounts" within the meaning of the Uniform Commercial Code. K.R.S. 355.9–106 defines "accounts" as follows:

(1) Account means any right to payment for goods sold ... or services rendered which is not evidenced by any instrument or chattel paper; ...

The Court has already found that the "contracts" are not instruments, and now finds that they are not chattel paper, as urged by First National Bank. Chattel paper is defined in K.R.S. 355.9–105(1)(b) as "A writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods." The notes which the debtor signed which accompany the "two for ones" represent a monetary obligation. However, the Court must find that the language embodied in the writing objectively indicates that the parties intended to create or provide for a security inter-

est. The second inquiry a court must make is a factual determination whether the parties actually intended to create a security interest. *See, In re Owensboro Canning Co., Inc.,* 46 B.R. 607, 610 (Bkrtcy., W.D. Ky.1985). As stated in the case of *In re Nottingham,* 6 UCC Rep. 1197, 1199 (Bkrtcy., E.D.Tenn.1969):

There are no magic words that create a security interest. There must be language, however, in the instrument which when read and construed leads to the logical conclusion that it was the intention of the parties that a security interest be created.... The requirements of the Code for creating a security interest are simple—an intention to create a security interest is all that need be shown—a dozen words or less are sufficient, but the security agreement must contain language that meets this simple requirement.

The Court finds that the "two for one contracts" do not indicate that the parties intended to create a security interest, there being no language in the instrument which can lead us to that conclusion.

■ Therefore, as we have found that the "contracts" are accounts, K.R.S. 355.9–302 provides that a security interest in accounts can only be perfected by filing. However, filing is not required with respect to "... an assignment of accounts ... which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts ... of the assignor ...". Two of the "contracts" are endorsed as "assigned" to the First National Bank. The remainder came into First National Bank's possession without any notation. An interpretive problem is what assignments do not amount to a "significant part" of the outstanding accounts of the assignor? Comment 5 to UCC 9–302 identifies "casual or isolated" assignments as the targets of eligibility for automatic perfection. The Comment further advises that "[a]ny person who regularly takes assignments of any debtor's accounts should file." *See,* J. White & R. Summers, Uniform Commercial Code, Section 23–8 at 926–927 (2nd ed. 1980). In this case, First National Bank took a series of assignments over a period of time, not just an isolated one. Therefore, the Court finds that First National Bank is an unperfected party as it did not file to perfect its interest, and that Reelfoot Bank, as a perfected secured party, defeats any interest that First National has in the "two for one contracts".

■ Further, as the claim of Reelfoot exceeds the amount collected by the Trustee on the "contracts", and appears properly perfected and beyond the reach of 11 U.S.C. Section 547, Reelfoot is entitled to be paid the entire proceeds from the "two for one contracts", subject to administrative expense.

The next issue to be addressed is the Trustee's entitlement to administrative expense and commission. The Trustee has been paid interim commission on $13,658.37 of the "two for one" proceeds, and seeks a commission of $521.76 on the remaining $11,392.00 (See 11 U.S.C. Section 326), plus reimbursement of $117.80 for her expenses. The Trustee's counsel seeks an attorney fee in the amount of $1,201.80 and expense reimbursement totalling $144.99, under authority of an employment Order entered December 15, 1981, for professional services and expenses incurred in this adversary proceeding.

Section 506(c) of the Bankruptcy Code concerns the award of administrative expense from secured assets, and states as follows:

The Trustee may recover from properties securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or of disposing of, such property to the extent of any benefit to the holder of such claim.

■ This Court has previously discussed the Trustee's obligation to make a judgment call concerning the likelihood that an equity might exist in the proceeds, before liquidating any property that appears secured. *In re B. and L. Enterprises, Inc.,* 26 B.R. 220 (Bkrtcy., W.D.Ky.1982). In the

case at bar, the Court finds that the Trustee made a reasonable judgment call concerning the question of the existence of equity in this property, and is entitled to her administrative expense and commission in the amounts requested, as well as reimbursement to the Trustee's counsel for attorney fees and expenses. The Court has previously admitted in this Opinion to its difficulty in trying to classify the "two for one contracts" in determining the validity, perfection and priority of any security interest in the same. Therefore, the Court appreciates that the Trustee in trying to collect these contracts was faced with a complex question. It is also noted that the labor of the Trustee and her counsel resulted in collection of all but two of the contracts although for less than their face value, and the two uncollected contracts have been reduced to judgment.

The above constitutes Findings of Fact and Conclusions of Law pursuant to the Rules of Bankruptcy Procedure 7052, and a separate Order will be entered this date.

A copy of this Memorandum Opinion is mailed to Lucius P. Hawes, Jr.; Robert Manchester; Albert Jones; Thomas Bugg; and to J.L. Atwill.