In re John A. WILLIAMSON, Debtor.

Thomas R. NOLAND, Trustee in Bankruptcy, Plaintiff,

v.

John A. WILLIAMSON, et al., Defendants.

Bankruptcy No. 88–00901.
Adv. No. 3–88–0087.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 5, 1988.

Thomas R. Noland, Dayton, Ohio, for trustee.

Charles D. Ross, Dayton, Ohio, for Shawmut Mortg. Co.

James P. Hickey, Dayton, Ohio, for Purchaser, Terry D. Bates.

Philip E. Langer, Dayton, Ohio, for The Huntington Bank.

Rodney D. Keish, Dayton, Ohio, for Rodney D. Keish.

Robert Berger, Dayton, Ohio, for debtor.

## DECISION AND ORDER DENYING TRUSTEE'S MOTION FOR DEFAULT JUDGMENT AND DENYING TRUSTEE'S REQUEST FOR RECOVERY OF COSTS AND EXPENSES UNDER 11 U.S.C. § 506

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the request of the trustee in bankruptcy to recover certain costs and expenses related to the sale of the debtor's interest in real estate pursuant to 11 U.S.C. § 506 and upon the trustee's motion for a default judgment in the adversary proceeding. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K), (N) and (O).

### FACTS

1) On April 29, 1988 the trustee for the bankruptcy estate of debtor John A. Williamson filed this adversary proceeding to sell the debtor's one-half interest in certain real estate free and clear of liens pursuant to Section 363 of the Bankruptcy Code. Named as defendants were the debtor, Wanda L. Williamson (the debtor's former spouse), Shawmut Mortgage Corporation, ITT Financial Services, the Huntington National Bank, Rodney Keish, and the Treasurer of Montgomery County, Ohio;

2) Huntington National Bank filed an answer and claimed an interest in the real estate as a result of filing a certificate of judgment on November 18, 1987 in the amount of $3,177.46 with interest at the rate of 16.95 percent per annum;

3) Rodney Keish filed an answer admitting he claimed an interest in the real es-

tate by virtue of a certificate of judgment, filed March 31, 1988;

4) On May 20, 1988 the trustee filed an application (in the debtor's estate file—not in the adversary proceeding) to employ Patricia Walsh as a real estate agent for the purpose of selling the real estate. The application stated that the "real estate agent shall be employed on a commission basis of 7% of the gross sale proceeds should the real estate property sell and the sale proceeds result from the closing." A copy of the listing contract, containing a sales price of $52,900, was attached to the application;

5) In her affidavit, Patricia Walsh stated that "I have been advised and understand that my compensation to be paid or reimbursement of out of pocket expenses to be made to me, a real estate agent, regarding this appointment can only be paid after review and approval of the court by entered order";

6) On May 24, 1988 the court entered an order that the "Trustee shall employ Pat Walsh of Heritage Realtors as real estate agent to sell the real estate as previously set forth in said application based upon a 7 percent commission on the gross sales price of the real estate sold." The order further provided that "any compensation or reimbursement of expenses requested by the agent pursuant to sale shall be made only upon application and further order of this Court after appropriate notice and hearing as the Court may direct";

7) Records in the debtor's estate file indicate that both the trustee's application and court's order, above, were served upon Charles D. Ross, an Attorney for Shawmut Mortgage Corporation;

8) On June 1, 1988 the trustee gave notice that he had accepted a contract to purchase the real estate for $54,000. The notice, which was filed in the debtor's estate file, informed creditors that "[t]he Court may enter an order for the sale of said real estate as set forth above unless a written objection is filed with the clerk ... no later than 10 days from the date of issuance of this notice";

9) Also on June 1, 1988 the trustee filed with the court an "Application to Approve Sale of Real Estate" in which he requested the court to approve a sale of the real estate to Terry D. Bates for $54,000. The application was filed in the debtor's estate file and the certificate of service indicates that a copy of the application was served on Shawmut Mortgage Co., c/o Charles D. Ross, Esq.;

10) On June 3, 1988 this court ordered that the time for filing objections to the trustee's notice of sale was shortened to June 13, 1988. A copy of the order was mailed to Shawmut Mortgage Co.;

11) On June 8, 1988 Shawmut Mortgage Corporation filed in the debtor's estate file a "Conditional Consent to Sell" which reads as follows:

Shawmut Mortgage Corporation hereby consents to the sale as proposed by the Trustee in the Notice of June 2, 1988 conditioned upon full payment to Shawmut Mortgage Corporation of its indebtedness secured by a first mortgage. A payoff statement is attached hereto as Exhibit 1 in the amount of $52,995.96 as of June 30, 1988.

12) On July 26, 1988 the court entered an order in the adversary proceeding entitled "Judgment Entry and Order Selling Real Estate Free and Clear of Liens." The order, which was prepared by the trustee, finds that Shawmut Mortgage Company filed "its consent to this sale on June 8, 1988," that the Huntington National Bank requested a sale of the real estate and protection of its lien position, and that Rodney Keish asserted no defense to the sale. The order further stated that no objections had been filed to the notice of sale and that the sale was free and clear of liens with the liens to attach to the proceeds of sale in the amount of $54,000. The court also found that the trustee's statutory fee ($1,800) and reasonable costs and expenses ($450), as well as the realtor's commission ($3,780) and real estate taxes, would be paid out of the sale proceeds prior to any payment to the first mortgage holder, Shawmut Mortgage Company;

13) On July 27, 1988 the closing for the sale of the real estate was held;

14) On July 29, 1988 Shawmut Mortgage Company filed a motion for the court to reconsider and vacate its order of July 26, 1988 on the ground that it "had consented to a judgment on the condition that its mortgage indebtedness was paid *in full,*" and that the judgment provided for Shawmut Mortgage Company to receive payment only after the trustee, realtor, and taxes are paid;

15) On July 29, 1988 the court entered an order which provided that "the sale of the real estate as approved in the Judgment Entry of July 26, 1988 is hereby suspended until further order of this Court";

16) A hearing was scheduled for August 8, 1988 to reconsider the court's order of July 26, 1988. The trustee and counsel for Shawmut Mortgage Company requested a continuance of three weeks to attempt a resolution of the matter;

17) On August 16, 1988 an order, signed by the trustee and counsel for Shawmut Mortgage Corporation, was entered in the adversary proceeding. The order vacated the court's previous "Judgment Entry and Order Selling Real Estate Free and Clear of Liens" entered on July 26, 1988. The matter of the sale of the real estate by the trustee was set for a pre-trial hearing for August 25, 1988;

18) On August 22, 1988 the trustee filed a motion for default judgment in the adversary proceeding against Shawmut Mortgage Company for failure to answer the trustee's complaint or otherwise defend;

19) Subsequent to the pretrial conference the court entered the following order:

A pretrial conference was scheduled for this date. [The trustee] reported that the parties had reached a settlement which will be presented to the court by agreed entry approving the sale which is the subject of this adversary proceeding with the liens attaching to the proceeds. From the proceeds Shawmut Mortgage Corporation is to be paid $52,000.00.

Shawmut may be liable for expenses of sale pursuant to 11 U.S.C. § 506(c).

A hearing to determine the amount of reasonable, necessary costs and expenses of disposing of the property and the extent of a benefit to Shawmut will be set when the agreed entry is filed.

20) On August 29, 1988 the court signed an "Entry Reinstating and Modifying Judgment Entry of July 26, 1988." The order is signed by the trustee and indicates that the trustee was authorized to sign the entry on behalf of the attorneys for Shawmut Mortgage Company, the Huntington National Bank, Terry D. Bates, and for Rodney Keish. Essentially, the order confirmed the sale of July 27, 1988, ordered the proceeds of sale ($54,000) to be turned over to the trustee, and ordered the release of the mortgages and certificates of judgments from the property. In addition, the trustee was ordered to pay the pro rata real estate taxes of $64.79, the conveyance fee of $108.00, any fees for the release of the mortgage of ITT as well as for the release of the judgment liens of Huntington Bank and Rodney Keish, and the costs to record the order of August 29, 1988. The order further provided that the court will later determine the allowance of the trustee's fees, costs and expenses of sale, and the allowed claim of Shawmut Mortgage Company;

21) A hearing was held on October 13, 1988 to consider the following matters:

a) the trustee's motion for default judgment filed August 22, 1988,

b) proof of necessary and reasonable expenses of sale, and

c) the extent of benefit of the expenses of sale to Shawmut Mortgage Company;

22) At the hearing, Jerry Johnson, a Vice-president for Shawmut Mortgage Corporation, testified that the balance of its claim as of the date of the property's sale was $54,017.81.[1] He also testified that had the automatic stay been lifted and the property been foreclosed upon in state court, the Veterans' Administration would have made up any difference between the sales

---

1. The details of this claim are discussed *infra.*

price of the property and the amount owing to the Shawmut Mortgage Corporation on the date of sale. He also testified that Shawmut Mortgage Company did not care what price the property sold for so long as it was "made whole."

## CONCLUSIONS OF LAW

The issue before the court is whether the trustee may recover under 11 U.S.C. § 506(c) his statutory commission, attorney fees, and the cost and expenses of the sale of the debtor's interest in real estate when the gross proceeds of sale are insufficient to pay those items and the full amount of the claim of the first mortgage holder.[1A] An additional issue is whether, despite the provisions of Section 506(c), the "Conditional Consent to Sell" filed by Shawmut Mortgage Corporation entitles the trustee to charge the mortgage company with the costs and expenses of sale.

### Section 506(c)

Traditionally administrative expenses have not been charged against secured creditors unless the expenses were incurred primarily for the benefit of the secured creditor or the creditor caused or consented to such expenses. *Matter of Trim–X, Inc.,* 695 F.2d 296; 301 (7th Cir. 1982). Section 506(c) of the Bankruptcy Code represents a partial codification of this general policy and its exceptions:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. 11 U.S.C. § 506(c).

Although this section permits some costs to be shared with secured creditors,

> [t]he congressional reports inhibit too expansive a reading of section 506(c) by noting expressly that *'recovery is limited to the extent of any benefit to the holder' of the secured claim. In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. 598, 602 (Bankr.E.D.Va.1985) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., at

357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., at 68 (1978)).

■ In order for the trustee to recover the costs and expenses associated with the disposition of a debtor's property from the property securing an allowed secured claim, it must be shown under Section 506(c) that the costs and expenses were 1) reasonable, 2) necessary and 3) benefited the secured creditor. The party seeking recovery bears the burden of proving that Section 506(c) is applicable. *Matter of Combined Crofts Corp.,* 54 B.R. 294, 297 (Bankr.W.D.Wisc.1985); *In re Hardy,* 39 B.R. 804, 807 (Bankr.N.D.Okla.1984); *In re Korupp Associates,* 30 B.R. 659, 661 (Bankr.Maine 1983).

### *"Necessary Expenses"*

'Necessary" costs appear to be those that are unavoidably incurred by the trustee or debtor in possession in the preservation or disposal of the secured property.... Thus, expenses which were incurred during periods when the collateral could have been abandoned and turned over to the secured creditor are not 'necessary expenses' within the meaning of section 506(c). *Matter of Combined Crofts,* 54 B.R., at 297.

*Accord: Matter of Hunerdosse,* 85 B.R. 999 (Bankr.S.D.Iowa 1988); *Kotter v. First State Bank of Beardstown (In re Kotter),* 59 B.R. 266 (Bankr.C.D.Ill.1986). Therefore, the question here is whether the trustee has unavoidably incurred expenses and costs in connection with the sale of the debtor's interest in real estate. The answer is dependent upon the trustee's adherence to the basic role of a chapter 7 trustee. A chapter 7 trustee is usually regarded as the representative of a debtor's unsecured creditors and is to use the powers granted him by the Bankruptcy Code for the benefit of those creditors. A trustee may sell a debtor's property under 11 U.S. C. § 363, but generally only to benefit the unsecured creditors, i.e. when "the sale proceeds *will fully compensate secured lienholders and produce some equity for*

---

**1A.** At the hearing the trustee withdrew his request for his statutory commission.

*the benefit of the bankrupt's estate."* *Matter of Riverside Investment Partnership,* 674 F.2d 634, 640 (7th Cir.1982).[2] When, after a reasonable period of time for investigating the value of a debtor's property, it appears to the trustee that a sale of a debtor's property will yield no benefit to the estate, it is appropriate for the trustee to abandon the property on the ground that the property "is burdensome to the estate" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). To attempt to sell estate property after it is apparent that no potential equity exists for the estate is "unnecessary" under Section 506(c).

 In the instant proceeding, the debtor originally listed the value of his one-half interest in real estate as $35,000 so that it appeared from his schedules that the entire interest was worth $70,000. The debtor's schedules also indicated that there was a first mortgage in the amount of $48,000 in favor of Shawmut Mortgage Company and a $5,800 second mortgage in favor of ITT Financial Services. On the basis of this information, a trustee would be justified in initially concluding that there existed a reasonable possibility of realizing a benefit for the estate by selling the debtor's property interest. But at some point in this matter, prior to the sale of debtor's interest, it had to have become apparent to the trustee that any previously expected benefit to the estate was illusory. By June 8, 1988 the trustee had notice that Shawmut Mortgage Company was claiming a first mortgage balance of $52,995.96 and that the Huntington National Bank was asserting a judgment lien of $3,117.46 plus interest. In addition, as shown in the judgment entry of July 26, 1988, prepared and submitted to this court by the trustee, the trustee anticipated a statutory fee of $1,800, a realtor's commission of $3,780, and cost and expenses of $450.00. On the basis of these figures, prepared by the trustee, there would be no funds available for the general unsecured creditors, unless the property was sold for more than $62,143.[3] Yet, the trustee inexplicably proposed a sale of the property at a sales price of only $54,000.

Under these circumstances the court does not understand how the trustee could conclude that a sale would produce any benefit for the bankruptcy estate. Once the lack of equity for the estate became apparent to the trustee, he should have abandoned the property or at least have ceased his efforts to complete the sale of the property. In short, this sale was completely "unnecessary."[4]

### Benefit to the Secured Creditor

 A finding that the costs and expenses of the sale of a debtor's interest in property were not necessary is sufficient to prevent recovery under Section 506(c). Nevertheless, the court is also of the opinion that the secured creditor did not "benefit" from the trustee's sale as that term is judicially interpreted under Section 506(c).[5] To demonstrate a benefit under Section 506(c), the party seeking recovery of costs and expenses must "show that absent the costs expended the property would yield less to the creditor than it does as a result of the expenditure, although the provision does not expressly impose such a require-

2. 11 U.S.C. § 363(f) provides some exceptions to this general rule. Of significance to the instant proceeding is Section 363(f)(2) which permits a trustee to sell free and clear of an entity's interest in property if the entity consents to such a disposition. The appropriateness of charging a secured creditor with costs and expenses because of consent is discussed below.

3. Actually a sales price exceeding $62,143 would be required to yield a benefit for the estate. The trustee's calculations are based on a sales price of $54,000. In arriving at the $62,143 minimum sales figures, the court has ignored the fact that both the trustee's and realtor's commissions are percentages of the sales price and would increase as the sales price rises above $54,000.

4. Although it is only those expenses incurred during the period when the collateral could have been abandoned that are unnecessary, the trustee has offered no evidence that any of the costs and expenses relate to the period before the property could have been abandoned.

5. The costs and expenses of the sale appear reasonable, but reasonableness of costs and expenses is, of course, only one element required to be satisfied for recovery under Section 506(c).

ment." *Brookfield PCA v. Borron,* 36 B.R. 445, 448 (D.E.D.Mo.1983), *aff'd,* 738 F.2d 951 (8th Cir.1984). Such benefit is "usually limited to the actual foreclosure costs saved by the lienholder where the full satisfaction would not otherwise have been realized because the secured claim exceeded the value of the encumbered property." *In re Codesco, Inc.,* 18 B.R. 225, 229 (B.S. D.N.Y.1982). Here, the trustee bears the burden of proving the benefit to Shawmut Mortgage Corporation and the "benefit must be shown in a quantitative rather than a qualitative sense." *In re Chicago Lutheran Hospital Assoc.,* 89 B.R. 719, 728 (B.N.D.Ill.1988). No evidence of the amount of benefit to Shawmut Mortgage Corporation was offered by the trustee at the hearing. Further, the testimony of Mr. Jerry Johnson, a vice-president for Shawmut Mortgage Corporation, reveals that had Shawmut Mortgage Corporation foreclosed upon the debtor's real estate in state court, the Veterans' Administration would have reimbursed it for any deficiency in sales price as well as the costs of foreclosure proceedings.[6]

Under these facts and circumstances, the court finds that there is no evidence that Shawmut Mortgage Corporation "benefited" from the sale of the debtor's real estate interest within the meaning of Section 506(c).

### Consent of a Secured Creditor

Although Section 506(c) of the Bankruptcy Code makes no reference to consent in connection with the recovery of reasonable and necessary costs and expenses expended for the benefit of a secured creditor, "courts applying the provision also consider whether the creditor caused or consented to the costs and expenses incurred."

*Brookfield PCA,* 36 B.R., at 449. But such consent is not to be lightly inferred. *General Electric Credit Corp. v. Levin and Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 77 (2nd Cir.1984); *Matter of S & S Industries, Inc.,* 30 B.R. 395, 398 (Bankr.E.D.Mich.1983). Again, the trustee bears the burden of proof: "It is not the secured creditor's burden to prove the lack of such consent. Instead, the burden lies with the party claiming such consent to establish that the secured creditor expressly or impliedly agreed to pay the expenses that party seeks to collect from the collateral." *In re Chicago Lutheran Hospital Assoc.,* 89 B.R., at 731.

In the instant matter, Shawmut Mortgage Corporation filed a "Conditional Consent to Sell" which reads as follows:

Shawmut Mortgage Corporation hereby consents to the sale as proposed by the Trustee in the Notice of June 2, 1988 conditioned upon full payment to Shawmut Mortgage Corporation of its indebtedness secured by a first mortgage. A payoff statement is attached hereto as Exhibit 1 in the amount of $52,995.96 as of June 30, 1988.

In this court's opinion this "consent" put the trustee on notice that only if Shawmut Mortgage Corporation were to receive *full payment* of its claim did it not object to the sale of debtor's interest in the real estate. There is no indication (either express or implied) in this "consent" document that Shawmut Mortgage Corporation agreed to absorb the costs of sale and accept less than the full amount of its claimed balance. In a similar case, where the first lienholder consented to a sale on condition that it receive no less than an amount equal to the

---

**6.** Admittedly, it appears that the Veterans' Administration benefited from the trustee's sale by being relieved of the obligation to pay foreclosure costs. The Veterans' Administration, however, has not been made a party to these proceedings and is, therefore, not before the court for purposes of considering whether it should be treated as the secured creditor in this matter and regarded as the recipient of a benefit from the trustee's sale. Also, as explained by Mr. Johnson, Shawmut Mortgage Corporation cannot presently recover any foreclosure costs

or deficiency on its mortgage balance from the Veterans' Administration because approval for the sale was not obtained from the Veterans' Administration prior to the trustee's sale. As a result, Shawmut Mortgage Corporation must bear any loss resulting from the sale and any benefit from the sale must be shown to have inurred to Shawmut Mortgage Corporation and not to the Veterans' Administration. In any event, as mentioned, the trustee introduced no quantitative evidence of a benefit to any secured creditor.

payoff balance on its secured claim, less a prorated share of advertising expenses, the court found that the creditor did not consent to the other expenses of sale or "cause" them to be incurred:

> Certainly, FLB [the secured creditor] did not seek the aid of the Bankruptcy Court, in fact, FLB had moved to have the automatic stay lifted prior to the Court's approval of the trustee's petition to sell free and clear of liens. Thus, in no way did FLB 'cause' the disposition of the property by auction. *Federal Land Bank of Louisville v. Belew* (*In re Belew*), 44 B.R. 12, 14 (Bankr.N.D.Ala. 1984).

"It is particularly inappropriate to view the creditor as causing or consenting to costs and expenses where ... it moves to lift the automatic stay." *Brookfield PCA v. Borron*, 36 B.R., at 448.[7]

In this court's view, the trustee has not demonstrated that Shawmut Mortgage Corporation consented to share the costs of the sale of debtor's property or caused them to be incurred by the trustee. Shawmut Mortgage Corporation simply agreed to the sale if it were paid in full. The costs and expenses of the sale were caused by· the trustee's insistence upon going forward with the sale.

### Allowed Secured Claim of Shawmut Mortgage Corporation

Prior to ordering the distribution of the $54,000 of sales proceeds from the sale of the real estate, it is necessary to determine the secured status of Shawmut Mortgage Corporation.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a).

At the hearing Mr. Jerry Johnson of Shawmut Mortgage Corporation testified that the pay-off balance on debtor's mortgage as of August 3, 1988 was $54,017.81. Upon cross-examination the following breakdown of this balance was offered:

| | |
|---|---|
| $48,351.06 | principal balance |
| 4,081.00 | (interest accrued from October 1, 1987 to August 3, 1988 at $13.25 per diem) |
| 192.24 | late charges |
| 11.00 | mortgage release fee |
| 665.16 | advances to escrow |
| 108.90 | property inspection fees |
| 603.50 | attorney fees |
| $54,012.86 | (The $4.95 discrepancy was not explained to the court) |

The general rule is that interest on a creditor's claim stops accruing on the date a petition in bankruptcy is filed. 11 U.S.C. § 502(b)(2). On the date the debtor filed his petition in bankruptcy (March 22, 1988), the claim of Shawmut Mortgage Corporation consisted of a principal amount of $48,-351.06 and $2,292.25 of accrued interest (173 days [from October 1, 1987 to March 22, 1988] × $13.25 per diem) for a total claim of $50,643.31. In the case of oversecured creditors, however, postpetition interest is permitted to the extent of any "security cushion" in the collateral:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be al-

---

**7.** On April ·8, 1988 Shawmut Mortgage Corporation filed a motion to lift the automatic stay of Section 362 in order to foreclose upon the debtor's real estate in state court. The trustee resisted the motion. On May 9, 1988 an agreed entry was filed wherein it was agreed that for six months the automatic stay would remain "in full force and effect *with the Trustee offering the property for sale at a price sufficient to pay off Plaintiff's first mortgage.*"

lowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. 11 U.S.C. § 506(b).[8]

■ Because the real estate in this proceeding sold for $54,000 there exists a security cushion of $3,357 ($54,000 — $50,643) to absorb the postpetition accrual of interest on the claim of Shawmut Mortgage Corporation.[9] The trustee disagrees and maintains that no security cushion exists. On August 23, 1988 the trustee caused an appraisal to be made of the real estate and the appraiser valued the real estate at $49,000. The trustee asserts that this value should serve as the maximum amount available for the secured claim of Shawmut Mortgage Corporation. In view of the fact that the property has been sold and the value of the property realized by the sale, the court fails to discern that a post-sale appraisal of the property has any relevancy in establishing the value of the property for the purpose of determining the amount of the secured claim of Shawmut Mortgage Corporation. Proceeds of $54,000 have taken the place of the real estate and it appears self-evident that the sale proceeds represent the value of the property.[10]

As of the date of sale, then, the amount of Shawmut Mortgage Corporation's secured claim was $50,634.31 (balance owing on petition date) plus $1,682.75 (127 days × $13.25 per diem) of postpetition interest for a total secured claim of $52,326.06.[11] With respect to the attorney fees and other charges requested by Shawmut Mortgage Corporation as part of its allowed secured claim, Section 506(b) permits an oversecured creditor to recover "reasonable fees, costs, or charges *provided for under the agreement* under which such claim arose." There was no evidence produced at the hearing that the fees and charges requested by Shawmut Mortgage Company were provided for in an agreement between the debtor and the creditor, and, therefore, the recovery for these items is disallowed. The allowed secured claim is $52,326.06.

## TRUSTEE'S MOTION FOR DEFAULT JUDGMENT

On August 22, 1988 the trustee moved for a default judgment against Shawmut Mortgage Corporation on the ground that it had failed to file an answer in the adversary proceeding. At the outset, the court notes that this entire matter has not been a model of procedural regularity. This may have been due in part to the trustee's elec-

---

**8.** Section 506(b) renders a secured creditor's postpetition interest subordinate to costs and expenses recovered by the trustee under Section 506(c), but as discussed above, in this proceeding there are no costs and expenses recoverable by the trustee under Section 506(c).

**9.** The court is cognizant that only one-half of the real estate is estate property because the debtor only owned one-half of the property. However, the court is satisfied that calculations based on a one-half interest in the estate yield almost the same allowed secured claim for Shawmut Mortgage Corporation as those based on the assumption that the entire property is estate property. For simplicity the real estate is treated as if the entire property became estate property upon the debtor's filing his petition in bankruptcy.

**10.** The trustee cites *In re Richardson,* 82 B.R. 872 (Bankr.S.D.Ohio 1987) for the proposition that for purposes of determining a creditor's secured status, the court must reduce the value of the collateral by the estimated costs of selling the property. Although the court does not now decide whether it will follow the rule of *Richardson* in future cases, the court notes that

Section 506(a) requires a valuation in light of the *purpose* of the *valuation* and the *proposed disposition* or *use* of such property. In *Richardson* the property was not sold and the debtor retained the property. The purpose of the valuation was to avoid a creditor's judgment lien. In the instant matter the property has been sold and there is no need to "estimate" the value of the property; that value has been realized. More importantly, the court has already determined that the trustee will not be permitted to recover costs and expenses from the secured creditor, primarily because the costs and expenses were unnecessary under Section 506(c). To follow the rule of *Richardson* under the facts of this case and reduce the value of the collateral by 10% as an estimate of costs and expenses of disposing of the property would render the court's previous determination a nullity and override the provisions of Section 506(c).

**11.** Counsel for Shawmut Mortgage Corporation stated at the hearing that postpetition interest was being requested only to the date of sale of the real estate.

tion to initiate two different sale procedures. On April 29, 1988 the trustee filed an adversary proceeding to sell the debtor's interest free and clear of liens. But on June 1, 1988 the trustee began a second and independent sale proceeding by filing a notice in the debtor's estate file that he would be selling the property unless a written objection was filed by a creditor within ten days.[12] Shawmut Mortgage Corporation filed its "Conditional Consent to Sell" in the estate file and filed no answer in the adversary proceeding.[13]

Despite the technical lack of an answer in the adversary proceeding, the court has no difficulty in viewing the "Conditional Consent to Sell" as having been constructively filed in the adversary proceeding. Furthermore, in determining whether a defendant has made an appearance in a case, courts look beyond the presence or absence of formal appearances and filed papers "to examine other evidence of active representation." *Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270, 271 (6th Cir.1981). The defaulting party "has appeared," if he has indicated to the moving party a clear purpose to defend the suit. *Muniz v. Vidal*, 739 F.2d 699, 700 (1st Cir.1984). In this court's view, both the "Conditional Consent to Sell" and the agreed entry entered in the relief from stay proceeding made it quite clear to the trustee that Shawmut Mortgage Company objected to the trustee's proposed sale and would defend against it, unless full payment were received.[14] Denial of the trustee's motion for default judgment under the circumstances of this case is consistent with modern trial practice concerning default judgments:

> The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations.... It is only

appropriate where there has been a clear record of delay or contumacious conduct. *E.F. Hutton and Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir.1972).

[D]efault judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits. *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir.1974).

For the foregoing reasons it is hereby ORDERED that:

1) the trustee's motion for default judgment is DENIED;

2) the trustee's request for costs and expenses under § 506(c) is DENIED;

3) the secured claim of Shawmut Mortgage Corporation is ALLOWED in the amount of $52,326.06 and the trustee shall disburse $326.06 to Shawmut Mortgage Corporation.

---

12. The reason for beginning an additional sale proceeding has not been disclosed to the court. The second proceeding appears procedurally incorrect because Bankruptcy Rule 7001 requires an adversary proceeding "to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property."

13. Subsequently the judgment entry and order to sell the real estate was filed in the adversary proceeding.

14. As a result the court is dismayed and disappointed that the trustee prepared the judgment entry of July 26, 1988 which recites that Shawmut Mortgage Company filed its consent to the sale, but fails to indicate in any manner that this consent was qualified.