In re NATIONAL ENTERPRISE WIRE CO., INC., Debtor.

Bankruptcy No. 87–01624.

United States Bankruptcy Court, N.D. New York.

April 14, 1989.

Supnik & Silverman, Attorneys for Trustee, Syracuse, N.Y. (Michael L. Supnik, of counsel), for trustee.

Melvin & Melvin, Syracuse, N.Y. (Louis Levine, of counsel), for Merchants Bank.

Kim F. Lefebvre, Asst. U.S. Trustee, Albany, N.Y.

## MEMORANDUM-DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has before it the Application For Payment of Administrative Expense As Trustee and Attorney ("Fee Application") of Michael L. Supnik, Esq., as Trustee ("Trustee") and Supnik and Silverman, Esqs. ("Silverman") as attorneys for the Trustee in the bankruptcy case of National Enterprise Wire Co., Inc.

### FACTS

On December 3, 1987, the Court entered an Order for Relief against National Enterprise Wire Co., Inc. ("Debtor"), which arose from the filing of an involuntary petition in Chapter 7 of the Bankruptcy Code, 11 U.S. C.A. §§ 101–1330 (West 1979 & Supp.1989) ("Code"), on November 16, 1987. In the schedules filed December 14, 1987, the Debtor indicated $1,143,619.00 in debt and $605,000.00 in property. Its Statement of Financial Affairs, filed the same day, described the cessation of its operations, the sale of fasteners and tools, in May 1987 and identified carrying on business over the past six years in the names of "CNY Fastener—1/10/69, National Enterprise Wire Co.—5/14/84, Northeastern Wire Corp.—10/18/83 [and] Newco Fastening Group—5/7/84." [1]

The Trustee's Fee Application indicates that he was appointed to act on November 17, 1987 while Silverman was appointed Trustee's Attorney on November 25, 1987.

The Fee Application further indicates that compensation is sought for services rendered by the Trustee and Silverman in connection with the sale of two parcels of real estate formerly occupied by the Debtor at 102–104 and 106 Luther Avenue, Liverpool, New York and given a value of $325,-000.00 in the Debtor's schedules.

The Fee Application recites that immediately following the Trustee's appointment he responded to a motion made by the Merchants National Bank & Trust Company of Syracuse ("Merchants Bank"), the Debtor's major secured creditor, returnable on November 17, 1987. This motion sought an abandonment of the real property or, in the alternative, a sale of the real property within the Chapter 7 case to take advantage of two contracts for sale which had been negotiated by Debtor during the pendency of the involuntary Chapter 7 case, but prior to the entry of an order for relief. [2]

The Trustee points out that the total sale price negotiated at that juncture was $275,-000.00. However, after entering the picture, the Trustee recounts conferring with the attorneys for the Debtor, the petitioning creditors, Merchants Bank and the prospective purchasers whereupon it was decided that a sale of the Debtor's real property by the Trustee, free and clear of all liens and encumbrances, with liens and encumbrances to attach to the proceeds, would be the most beneficial way to dis-

1. Newco Fastening Group, Inc., Case No. 87–00860, is currently a no-asset Chapter 7 debtor in this court, Case No. 87–00860, having been the subject of an involuntary petition· filed on June 23, 1987 and the entry of an Order for Relief on September 8, 1987. Originally captioned as "Newco Fastening Group, Inc., a/k/a CNY Fastener, Inc., a/k/a North Eastern Wire Corporation a/k/a National Enterprise Wire Co., Inc.", the Order for Relief also "procedurally consolidated the proceeding of each corporation." In an Amended Order entered November 6, 1987, the caption was changed to "In re Newco Fastening Group, Inc." The Trustee and Sil-verman were appointed in an Order entered November 27, 1987, replacing the interim trustee originally appointed in an Order entered October 19, 1987. Newco and the Debtor appear to be closely held corporations having similar officers.

2. The Court notes that this motion, filed November 12, 1987 with an attached notice of motion dated November 6, 1987, was made in the bankruptcy proceeding of *Newco Fastening Group, Inc.*

pose of that property. The Trustee states that "[i]t was further agreed that there should be payment of administrative expenses and fees for the handling and consummation of the sale by the Trustee." *Fee Application*, para. 3 (Dec. 14, 1988).

Thus, the Trustee submits that he conducted the sale, on notice to creditors, before the Court, which resulted in a combined price for both properties of $310,000.00, some $35,000.00 more than the existing offers when he entered the case and the highest bid made. After payment of tax arrears of approximately $61,600.00 and closing expenses of $1,240.00, the Trustee stated that he deposited the net sale proceeds in his Trustee bank account. As of the date of the Fee Application, the Trustee had $249,833.00 on hand since interest had accrued in the sum of $1,937.00 and he had paid a bond premium of $434.00.

Upon review of a motion made on November 28, 1988 by Merchants Bank for an Order directing the disposition of the sales proceeds and interest, the Trustee noted that "the Bank has a valid duly recorded first mortgage lien on the real properties sold and the balance owed to it well exceeds the proceeds of sale on hand with the Trustee." *Id.* at para. 5. Said Order granting Merchants Bank's motion was entered January 5, 1989 and directed, *inter alia*, that the Trustee turn over the net proceeds less the sum requested in the instant application pending its determination by the Court. The Order also recited that Merchants Bank's remaining balance attaching to the proceeds was $256,953.26, from an original indebtedness of $459,578.91 secured by a first priority perfected security interest in all the Debtor's inventory and equipment and a first priority perfected mortgage lien on the real property sold by the Trustee.[3]

The Court notes that while the original Notice of Sale, filed on December 3, 1987, referenced two parcels of real property with offers of $150,000.00 and $125,000.00

and was similarly notated on the Order Confirming Sale, entered February 16, 1988, Merchants Bank's Notice Of Request For Disposition and/or Payment of Property Subject to Liens, filed November 28, 1988, indicated proceeds from the sale of inventory and equipment and real property (bearing the same address as the property in the December 3, 1987 original notice) of $62,204.30 and $248,330.92, respectively. According to Silverman's contemporaneous time records appended to the Fee Application, closing took place on December 14, 1988.

The Trustee and Silverman seek administrative expenses, by way of the Fee Application, in the sums of $5,000.00 for trustee commissions, apparently reached through application of Code §§ 326(a) and 330 and a purported stipulation between the Trustee and Merchants Bank, and $3,000.00 for attorney's fees, plus an additional $434.00 for a bond premium payment.

Reduced to its essentials, the Trustee and Silverman's Fee Application seeks compensation for participating in what is commonly referred to as a "fully secured sale."

In response to a letter from the Court requesting a basis for considering his application under Code §§ 326(a) and 330 where Code § 506(c) appeared to provide the relevant statutory authority, the Trustee quoted Code § 326(a) and stated that he acted with the full knowledge and consent of all interested parties in conducting a sale that brought in $35,000.00 more than the secured creditor had previously been prepared to accept. *See* Letter from Harold I. Silverman, Esq. to Hon Stephen D. Gerling (Jan. 11, 1989). The Trustee further stated that he would have abandoned his interest if all the parties in interest had not indicated that such a sale was the most desirable way to dispose of the property and possibly result in monies to the estate. *See id.*

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the subject matter and parties of this core proceed-

---

**3.** On January 8, 1988, Merchants Bank filed a proof of claim in Newco Fastening Group, Inc. "in the amount of $494,153.83 plus interest . . ."

reciting a principal of $459,578.91 and miscellaneous charges of $34,574.92.

ing by virtue of 28 U.S.C.A. §§ 1334 and 157 (West Supp.1989). The following constitutes findings of facts and conclusions of law pursuant to Bankruptcy Rules ("Bankr.R.") 2016(a), 9014 and 7052.

## DISCUSSION

Bankruptcy courts have generally taken the position that a trustee is not entitled to collect statutory commissions and expenses under Code §§ 326 and 330 on the sale of fully secured property since the estate would not receive any proceeds to distribute to those creditors holding unsecured claims and, thus, abandonment under Code § 554(a) would be warranted. *See In re Dinsmore Tire Center*, 81 B.R. 136, 138 (Bankr.S.D.Fla.1987); *In re Landreneau*, 74 B.R. 12, 13 (Bankr.W.D.La.1987); *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 609 (Bankr.E.D.Va.1985); *In re Lambert Implement Co., Inc.*, 44 B.R. 860, 861–62 (Bankr.W.D.Ky.1984); *In re B & L Enterprises, Inc.*, 26 B.R. 220, 223 (Bankr. W.D.Ky.1982); *In re Crisp*, 26 B.R. 274, 275–76 (Bankr.W.D.Ky.1982). *See also* 2 L. King COLLIER ON BANKRUPTCY ¶¶ 326.01, 554.02 (15th ed.1989).

As former Bankruptcy Judge G. William Brown observed,

> Secured creditors by consent and the trustee by acquiescence cannot impose upon the Court the duty to serve as a foreclosure or collection forum. Where secured creditors are of the opinion that the trustee is individually uniquely qualified to serve as their collection agent, such relationships should be established outside of bankruptcy administration and not under the official mantle of the trustee in bankruptcy. In the instant cases, the trustee's petitions for statutory commission seek to give official sanction to this form of accommodation.

*See In re Crisp, supra* 26 B.R. at 275.

It follows that if the Trustee herein is not entitled to compensation pursuant to Code §§ 326 and 330, Silverman's time is likewise non-compensable under the same statutes.

■ Where a trustee determines, in the exercise of his reasonable judgment, that equity might exist in the proceeds and chooses to liquidate rather than abandon but turns out to be mistaken, he may be entitled to costs and expenses, including attorney's fees, under Code § 506(c). *See Walker v. French (In re Padgett)*, 49 B.R. 212, 215–16 (Bankr.W.D.Ky.1985) (citing to *B & L Enterprises, supra*, 26 B.R. at 220); *In re Codesco Inc.*, 18 B.R. 225, 228–29 (Bankr.S.D.N.Y.1982). Moreover, a pro rata surcharge against the recovery to each secured creditor has been approved where the trustee was faced with the "emergency necessity" of liquidating without delay or the specter of "unacceptable deterioration and expense," when at the time it was impossible to tell from the debtor's records that there was a secured indebtedness of $650,000.00 and assets of $30,000.00. *See In re Nautica Sports Centre, Inc.*, 81 B.R. 144 (Bankr.S.D.Fla. 1987). *But see Noland v. Williamson (In re Williamson)*, 94 B.R. 958, 962 (Bankr.S. D.Ohio 1988) (trustee denied costs and requests where, *nter alia*, it became apparent prior to sale that estate lacked equity in property); *In re Landreneau, supra*, 74 B.R. at 13 (trustee's application for sale by "offset bid" denied where estate had no equity in "certain moveables" and record unclear as to consent of parties with interest in security).

■ Nonetheless, the only reimbursable claim that a trustee generally possesses in dealing with fully secured property is a surcharge pursuant to Code § 506(c) for the reasonable and necessary costs and expenses of preserving or disposing of such property for the direct benefit of the secured creditor. *See In re Dinsmore Tire Center, supra*, 81 B.R. at 138; *In re Bob Grissett Golf Shoppes, Inc., supra*, 50 B.R. at 602. *See also Central Bank of Montana v. Cascade Hydraulics And Utility Service, Inc. (In re Cascade Hydraulics And Utility Service, Inc.)*, 815 F.2d 546 (9th Cir.1987); *General Electric Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10 (2d Cir.1985); *General Electric Credit Corp. v. Levin and Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73 (2d Cir.1984); *Brookfield Pro-*

*duction Credit Ass'n v. Borron*, 738 F.2d 951, 952–53 (8th Cir.1984); *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); COLLIER ON BANKRUPTCY, *supra*, ¶ 506.06.

■ Alternatively, such costs and expenses are also available under Code § 506(c) if the secured creditor has caused or consented to the expense. *See In re North County Place, Ltd.*, 92 B.R. 437, 444 (Bankr.C.D.Cal.1988); *In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 730 (Bankr.N.D.Ill.1988); *In re Trim–X, Inc.*, *supra*, 695 F.2d at 301. However, the consent cannot be lightly inferred and must be clear on the facts of the case. *See In re Flagstaff Foodservice Corp.*, *supra*, 739 F.2d at 77 (quoting *In re S & S Ind., Inc.*, 30 B.R. 395, 398 (Bankr.E.D.Mich.1983)); *In re Modica*, 55 B.R. 605, 607 (Bankr.W.D. Va.1985) (citing to COLLIER ON BANKRUPTCY, *supra*, ¶ 506.06); *In re The New England Carpet Co.*, 28 B.R. 766, 772 (Bankr.Vt.), *aff'd*, 38 B.R. 703 (D.Vt.1983), *aff'd per curiam*, 744 F.2d 16 (2d Cir.1984).

■ Under either "test", the trustee bears the burden of proving the applicability of Code § 506(c), *see In re Williamson*, *supra*, 94 B.R. at 962; *In re Chicago Lutheran Hospital Ass'n.*, *supra*, 89 B.R. at 731, and that it is not a substitute for the recapture of ordinary administrative expenses normally the obligation of the debtor's estate. *See In re Cascade Hydraulics And Utility Service, Inc.*, *supra*, 815 F.2d at 548; *In re Parr Meadows Racing Association, Inc.*, 92 B.R. 30, 35 (E.D.N.Y. 1988); *C.I.T. Corp. v. A & A Printing, Inc.*, 70 B.R. 878, 881 (M.D.N.C.1987); *In re Codesco*, *supra*, 18 B.R. at 229–30.

Accordingly, the Court is sensitized to a trustee's involvement in fully secured sales.

■ The Court acknowledges the disorganized state in which the Trustee found the Debtor and its affiliated corporations at the onset of the involuntary petition in November 1987 and the immediate pendency of Merchants Bank's motion, made in the related Newco bankruptcy but concerning the property listed in the Debtor's schedules, as both impacting on his duty to wait a reasonable time to consider abandonment so as to ascertain any value to the estate. *See* COLLIER ON BANKRUPTCY, *supra*, at ¶ 554.02 at 554–5 to 554–6. While it questions the direct benefit conferred upon Merchants Bank beyond the actual foreclosure costs saved since it appears that the additional $35,000.00 resulted from previously unincluded personal property, the facts support a finding that the bank consented to the Trustee's active role in the sale and administrative expenses incurred in furtherance thereof. The Court also notes that the record does not indicate any request by Merchants Bank that the Trustee *not* handle the sale or limit his activities. *See In re North County Place, Ltd.*, *supra*, 92 B.R. at 445 (citing to *In re Cann & Saul Steel Co.*, 86 B.R. 413, 418 (Bankr.E.Pa.1988)).

Under the facts presented, the Court believes that the purpose of his involvement and that of his attorney was not merely to provide the secured creditor with an inexpensive alternative to foreclosure, from which a passive trustee as a mere conduit might personally receive compensation, but rather to actively facilitate and supervise a sale before the Court to maximize the value of fully secured assets for the prospect of some return to the general unsecured creditor body, notwithstanding that the actual beneficiaries turned out to be Merchants Bank and the taxing authorities.

Examining the Fee Application solely in the context of Code § 506(c), the Court concludes that, absent Trustee time records, it cannot begin to consider an award of $5,000.00, let alone assess reasonableness. *See In re Rosen*, 95 B.R. 11 (Bankr.N.D.N.Y.1988). *Cf. In re Trim–X, Inc.*, *supra*, 695 at 301–02. However, the Court does believe that the Trustee's role resulted in some direct benefit to Merchants with the bank's consent and will give him the benefit of the doubt on his judgment call with respect to the presence of equity. Therefore, relying generally on its knowledge of the case and the narrative contained in the Fee Application, the Court will award the Trustee compensation of $1,000.00, notwithstanding the absence of

time records. *See In re Rosen, supra,* 95 B.R. at 12.

■ Turning to that portion of the Fee Application which seeks compensation to Silverman, the Court has reviewed the contemporaneous time records and concludes that it must deny compensation for services rendered post-petition, but preappointment, in light of the "per se" rule adopted in the Second Circuit and that it can only compensate Silverman for those services he rendered in association with the sale.

Having made the necessary adjustments, the Court will award Silverman compensation for 15.66 hours @$125.00 per hour, or $1,957.50.

With regard to the bond premium of $434.00, it appears that the Trustee has already reimbursed himself in that amount and the Court need only approve that disbursement at this juncture.

The balance of any monies resulting from the Trustee's sale of the real property at 102–104 and 106 Luther Avenue, Liverpool, New York, and the personal property, in excess of the costs and expenses awarded herein, if presently being held by the Trustee or his attorney, shall be turned over to Merchants Bank.

IT IS SO ORDERED.