998 F.2d 1008
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FAIRFAX COUNTY BOARD OF SUPERVISORS, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, as Receiver and Custodian for
Trustbank Savings, F.S.B., formerly known as
Dominion Federal Savings & Loan
Association, Defendant-Appellee.
 No. 92-1789.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 31, 1993.
Decided: July 19, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-32-M)
 Argued: Valerie Perrin Morrison, Gold & Stanley, P.C., Alexandria, Virginia, for Appellant.
 Thomas Elliot Helf, Stauffer & Abraham, Vienna, Virginia, for Appellee.
 On Brief: H. Jason Gold, Howard I. Rubin, Gold & Stanley, P.C., Alexandria, Virginia, for Appellant.
 Kurt C. Rommel, Stauffer & Abraham, Vienna, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Fairfax County Board of Supervisors (County) challenges the district court's order denying the County's petition to charge the Resolution Trust Corporation (RTC), acting as receiver for Trustbank Savings, F.S.B. (Trustbank), with sums the County expended in performing certain construction work on land securing a loan from Trustbank. Section 506(c) of the Bankruptcy Code allows recovery of administrative expenses from a secured creditor for reasonable costs that were necessary to preserve or dispose of the collateral securing the secured creditor's lien, to the extent the costs benefit the secured creditor. 11 U.S.C. § 506(c) (1988). After reviewing the record and the arguments of counsel, we find that the expenses in question were not necessary to preserve or dispose of the property securing Trustbank's lien and therefore affirm.
 
 I.
 
 2
 Manchester Lakes Associates (MLA) owned 188 acres of unimproved land in Fairfax County, Virginia, which MLA sought to develop into a mixed residential and commercial area. In order to secure a higher density zoning classification for the development of the property, MLA entered into a series of agreements with the County that required MLA to construct certain public improvements on the land (Proffers).[1] The Proffers then became a part of the zoning requirements for the property. MLA was also required to post performance bonds as security for its promise to complete the Proffers.
 
 
 3
 Development of the property did not proceed smoothly and three creditors filed an involuntary bankruptcy proceeding against MLA on December 7, 1984. MLA waived its exclusive right under 11 U.S.C. § 1121(b) (1988) to file a plan for reorganization during the first 120 days after the bankruptcy court issued its Order for Relief. On October 7, 1985, Trustbank Realty Services, Inc. (Trustbank Realty), an unsecured creditor of MLA that had previously been hired to perform consulting work on the project's development, filed a Plan for Reorganization of MLA, which was confirmed by the bankruptcy court on December 17, 1985. Under the Plan for Reorganization, Trustbank Realty acted as plan administrator and sought buyers to purchase and develop the individual parcels of land.[2] In addition, the Plan for Reorganization stated that Trustbank, the secured creditor that had financed the project development prior to bankruptcy, would loan money to the bankruptcy estate for the completion of the Proffers and the final development plan to the extent Trustbank considered it reasonable under the circumstances.
 
 
 4
 Trustbank loaned in excess of $13 million to the bankruptcy estate under the reorganization plan. During the spring of 1989, however, Trustbank considered it unreasonable to continue advancing money to the project. At the time Trustbank decided to discontinue funding the project, all but one of the commercially viable parcels of the original development had been sold to other development companies. Trustbank Realty then procured a buyer for the final parcel (Parcel O), the sale of which would deplete the estate of assets to secure further loans.
 
 
 5
 After securing a buyer for Parcel O, Trustbank Realty petitioned the bankruptcy court for approval of its sale, abandoned work on the development, and petitioned the bankruptcy court to convert the proceeding to a liquidation under Chapter 7 of the Bankruptcy Code.
 
 
 6
 When Trustbank Realty stopped work on the project in April or May of 1989, the County prepared preliminary punch lists of outstanding work on the Proffers and noticed its intent to file an administrative expense claim against Trustbank pursuant to 11 U.S.C. § 506(c) for its expenses. The County also objected to the sale of Parcel O because after it was sold, there would be no other assets remaining in the estate against which the County could assert a § 506(c) claim. In an effort to facilitate the sale of Parcel O, Trustbank agreed to post a letter of credit for $525,000 to secure the County'ss 506(c) claim should the court find it to be meritorious, in exchange for the County withdrawing its objection to the sale. Parcel O was sold on August 22, 1989.
 
 
 7
 Prior to the trial in this matter, Trustbank was placed into receivership by the Resolution Trust Corporation (RTC). RTC substituted itself as the defendant in this action and the case was transferred to the district court pursuant to 28 U.S.C. § 157(d) (1988). Also prior to trial, the County determined that the development had a problem with serious off-site erosion and flooding of a storm drainage lake which had been previously accepted and approved by the County. The problem had been discovered after a severe storm in the spring of 1989, but it was not originally listed on the punch lists because the County believed it would correct itself. The County determined that the flooding was caused by development of the areas north of Manchester Lakes and by improper construction of the storm retention ponds and a road in the Manchester Lakes development. By 1991, the County determined the problem could be alleviated only by creation of a stream channel or drainage outfall at an estimated cost of approximately $475,500. Although the County does not argue that the stream channel construction is mandated by the Proffers, it seeks payment of that cost from Trustbank as an administrative expense.
 
 
 8
 At trial, the County produced evidence that the total cost for completion of all work on the Proffers and construction of the stream channel would be $988,912.68. The County had received $636,000, which was the amount remaining in the performance bonds MLA had posted for this project, and had spent $467,433.68 of this sum on construction work by the time of trial. Thus, the County had over $168,000 remaining to complete the work. At trial, the County estimated that it would cost approximately $46,200 to finish the work on the Proffers and $475,300 to complete the stream channel. Thus, the County had sufficient funds to complete the Proffers, but argues that it was entitled to additional money to complete the stream channel.
 
 
 9
 Because the $168,000 already received by the County is sufficient to finish the Proffers and RTC does not claim that it is entitled to a return of this money should we rule in its favor, we need not address whether the money expended to complete the Proffers is recoverable by the County as an administrative expense. Instead, we will address only whether the cost for completion of the stream channel may be charged against Trustbank as an administrative expense under § 506(c).
 
 II.
 
 10
 Section 506(c) of the Bankruptcy Code provides that"[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Courts have also allowed creditors who have provided services which meet the definition of administrative expenses under this section to recover under § 506(c). North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir. 1991), cert. denied, 113 S. Ct. 71 (1992); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan (In re Delta Towers), 924 F.2d 74, 77 (5th Cir. 1991); Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.), 799 F.2d 91, 95 (3d Cir. 1986). Section 506(c) is an exception to the general principle that administrative expenses are charged to the bankruptcy estate as a whole, as opposed to being charged to an individual creditor. In re Trim-X, Inc., 695 F.2d 296, 301 (7th Cir. 1982). For this reason, courts have narrowly construed § 506(c) to cover only those expenses which ensure "that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt." In re Parr Meadows Racing Ass'n, 92 B.R. 30, 36 (E.D.N.Y. 1988), aff'd in part, rev'd in part on other grounds, 880 F.2d 1540 (2d Cir. 1989), cert. denied, 493 U.S. 1058 (1990).
 
 
 11
 In this case, the district court granted a directed verdict for RTC, finding that the money being spent by the County was reasonable and benefitted the secured creditor, Trustbank, but was not necessary to preserve or dispose of the individual parcels securing Trustbank's loan to MLA. After giving plenary review to this decision, we agree and affirm.
 
 
 12
 An expense is not necessary for the preservation or disposition of the secured creditor's collateral unless it is somehow unavoidable. Noland v. Williamson (In re Williamson), 94 B.R. 958, 962 (Bankr. S.D. Ohio 1988). The County argues that the completion of the stream channel was necessary for the disposition of Trustbank's collateral because MLA entered into contractual obligations to complete certain improvements, including the stream channel, which the County was contractually and legally obligated to perform should MLA default on its obligations. The County further argued that the purchasers would not have bought the parcels had they not been guaranteed completion of the required improvements.
 
 
 13
 At the very least, the County's argument fails because it failed to prove that MLA was obligated to build the stream channel. Construction of the proposed stream channel was not mandated by the Proffers and was not a specific requirement of any contract contained in the record on appeal. Moreover, although the contracts approved by the bankruptcy court for the sale of the individual parcels of the property represented that each parcel would have storm-drainage facilities available for its use, the last of these sales was completed in 1989. The County did not determine that the flooding and erosion problem required the creation of the stream channel until 1991. Thus, the stream channel's construction could not have been a requirement of any of the sales contracts and it was, therefore, not necessary for the disposition of the land. Because the construction of the stream channel was not necessary under § 506(c), Trustbank, as the secured creditor, cannot be charged with the cost of its construction.
 
 
 14
 The County argues that a finding that the work was"necessary" is not required for recovery if Trustbank consented to the expenditure in question. In its view, an entity providing services to the assets securing a secured creditor's claim can recover under § 506(c) by either demonstrating that the expense was reasonable, necessary, and benefitted the secured creditor or by showing that the secured creditor consented to the expenditure. We disagree.
 
 
 15
 Evidence of consent merely acts as a substitute for the requirement that the expenditure benefit the secured creditor. See Trim-X, 695 F.2d at 299-301; 3 Collier on Bankruptcy p 506.06, at 506-61 (15th ed. 1992). It does not excuse the claimant from proving that the expenses were also reasonable and necessary to preserve or dispose of the collateral. Because the County failed to carry its burden with respect to the finding of necessity, it cannot recover under § 506(c) merely by demonstrating that Trustbank consented to the expenditures in question.
 
 III.
 
 16
 For the reasons discussed above, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 The Proffers primarily concerned the construction of roads and a sewer system. The Proffers also required MLA to build a soccer field and day care facility and dedicate certain parcels of the development to public use
 
 
 [2]
 These sales were subject to the bankruptcy court's approval