**In re Vincent ROGGIO, Debtor,**

**PENINSULA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

**v.**

**Carroll G. MOORE, Trustee of Chapter 11 Estate of Vincent Roggio; Joseph Pellegrino, Trustee of P & R Trust; Citibank, N.A., a National Banking Association and Callier Steel Pipe and Tube Co., Inc., Defendants.**

**Bankruptcy No. 5–84–00171. Adv. No. 5–84–0170.**

United States Bankruptcy Court, D. Connecticut.

May 6, 1985.

Robert F. O'Malley, Jr., Smathers & Thompson, Miami, Fla., J. Casey Healy, Gregory & Adams, Wilton, Conn., for Peninsula Federal.

S. Alan Stanley, Turner, Fascell, Russo & Stanley, P.C., Coral Gables, Fla., for Joseph Pellegrino.

Stuart D. Sender, Sherman & Sterling, New York City, for Citibank, N.A.

Eric Gross, Green & Gross, Bridgeport, Conn., for Callier Pipe and Tube Co., Inc.

John Kozyak, Kozyak & Tropin, P.A., Miami, Fla., for Callier Pipe and Tube Co., Inc.

Stephen E. Goldman, John Preysner, Jr., Robinson & Cole, Hartford, Conn., for Carroll G. Moore, Trustee of the Estate of Vincent Roggio.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

Peninsula Federal Savings and Loan Association ("Peninsula") brings this adversary proceeding to obtain an order (1) determining the validity and first priority of its security interest on the proceeds from a sale of real property [1] ("Golden Beach Property") located in Dade County, Florida, and (2) requiring the defendant, Carroll G. Moore, trustee of the estate of Vincent Roggio ("Moore"), to immediately disburse proceeds to Peninsula sufficient to satisfy its secured claim. The trustee counterclaims for attorney's fees which he believes are appropriate under 11 U.S.C. § 506(c).

## BACKGROUND

It is apparent from the evidence adduced at trial that Peninsula commenced a mortgage foreclosure action in the circuit court for Dade County, Florida, but that the involuntary petition underlying this proceeding intervened before the entry of judg-

---

**1.** Pursuant to the July 31, 1984 order of the United States District Court for this district, the subject property was sold free and clear of interests with such interests to attach to the sale proceeds in the order and priority in which they appear of record.

ment. Since Peninsula's state court action was stayed, 11 U.S.C. § 362, Peninsula, which was initially in contact with the ultimate purchaser, delivered the purchaser's 1.2 million dollar offer to the trustee. The trustee thereafter filed a motion to sell the Golden Beach Property free and clear, and on or about September 11, 1984, the sale was closed. The trustee has been holding the net proceeds of that sale since the closing, and as of January 30, 1985, the amount held totaled $1,193,476.97, including interest.

By the stipulation of the parties, the issues under consideration here are limited to the interests of Peninsula and Joseph Pellegrino in the proceeds and any right to attorney fees the trustee is entitled to under Code § 506(c). The interests of Citibank and Callier Steel will, if appropriate, be the subject of further proceedings.

## DISCUSSION

█ Peninsula and the alleged second mortgagee, Joseph Pellegrino, trustee of the P & R Trust ("Pellegrino"), each assert secured claims relative to the proceeds of the Golden Beach Property, including interest, fees and costs. Code subsection 506(b) provides for the payment of interest, fees and costs to a secured creditor if the property securing the creditor's claim is greater in value than that claim, i.e. the claim is oversecured:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

Peninsula's and Pellegrino's loan documents provide for interest and costs of collection. The Golden Beach Property sale produced net proceeds which, as noted,

**2.** These figures include attorney's fees allowed by the court, *see* computations on pages 453 and

totaled more than $1,193,000.00 as of January 30, 1985, and, as of that date the total claims of Peninsula and Pellegrino were $1,005,117.94 and $126,871.33 respectively.[2] Thus, as oversecured creditors, Peninsula and Pellegrino are entitled to interest and expenses under Code § 506(b) to the extent that funds remain after any allowed Code § 506(c) expenses are paid.

### CODE § 506(c)

█ The trustee contends that under Code § 506(c), he is entitled to costs, including attorneys' fees for services rendered in connection with the Golden Beach Property and that such costs are payable from Peninsula's share of the sale proceeds from that property. The costs claimed by the trustee are primarily for attorney's fees. Subsection 506(c) makes no provision for the payment of funds to reimburse a trustee out of a particular secured creditor's interest in sale proceeds. Rather § 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The trustee may therefore recover his allowable expenses, if at all, from the general proceeds of the sale of the Golden Beach Property, not specifically from Peninsula's share of those proceeds. However, before the trustee is entitled to any recovery under Code § 506(c), he must first satisfy the burden of proving that the secured creditors benefitted from the services or other bases for such costs. *In re New England Carpet Co.*, 744 F.2d 16 (2d Cir.1984); *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984).

I find that neither Peninsula nor Pellegrino benefitted from the trustee's attorneys' services or other asserted costs. In order to show benefit to a secured creditor, a trustee must show that the secured credi-

454 *infra.*

tor would not have realized the full satisfaction of its claim without the intervention of the trustee. *In re Codesco, Inc.,* 18 B.R. 225 (Bankr.S.D.N.Y.1982). No such finding is justified in this proceeding. The trustee did not enable these secured creditors to receive any more than they would have received if Peninsula had sold the property to the buyer directly instead of presenting the buyer's offer to the trustee.

■ The trustee also contends that Peninsula implicitly consented to the payment of the costs incurred by the trustee in the sale of the property and the maintenance by the trustee of the sale proceeds. Such consent is not to be lightly inferred, *In re Flagstaff Foodservice Corp., supra,* 739 F.2d 73, 77, *citing, In re S & S Industries, Inc.,* 30 B.R. 395, 398 (Bankr.E.D.Mich. 1983), and consent will not be implied here from a secured creditor's mere acquiescence to or cooperation in a trustee supervised sale. *Id.* The court in *Flagstaff* noted:

> Although it has been well said that "professionals should not be expected to finance the administration of liquidation or reorganization cases," ... "it does not follow that in the event the estate has no unencumbered funds from which to pay such expenses the secured creditor becomes obligated to satisfy these obligations." (citations omitted)

739 F.2d at 77. Although Peninsula concedes that it consented to the sale of the Golden Beach Property by the trustee, it does not follow that Peninsula consented to pay the trustee's expenses, including legal fees, particularly since it appears that part of the services the trustee's attorneys rendered were directed toward a possible challenge to the validity of Peninsula's mortgage. Accordingly I conclude that the trustee is not entitled to recover any costs from the sale proceeds of the Golden Beach Property under Code § 506(c).

### CODE § 506(b)

Having eliminated § 506(c) deductions, the following findings of fact are made in

**3.** Peninsula Exhibits A and B.

connection with the Peninsula and Pellegrino claims under § 506(b):

### Peninsula Mortgage

1. On July 6, 1982, the debtor executed and delivered a promissory note and mortgage on the Golden Beach Property to Peninsula, copies of which were introduced into evidence.[3] The Peninsula Mortgage was properly recorded on July 6, 1982 in the Dade County, Florida Official Records Book 11489 beginning at Page 1617 and mortgaged the property, legally described as Lots 7 through 11, inclusive, in Block "B" Section "B" of Golden Beach, according to the plat thereof, was recorded in the Dade County, Florida Plat Book 9, at Page 52.

2. The Note and Mortgage are owned and held by Peninsula as a first mortgage lien against the Golden Beach Property which is superior to the second mortgage lien of Pellegrino and the alleged liens of Citibank and Callier.

3. The installment of interest which became due and payable on the Note and Mortgage on October 1, 1983 and each installment which subsequently became due and payable thereon were not paid, and the Note and Mortgage are in default. As a result of that default, Peninsula accelerated maturity of the Note and Mortgage and commenced a mortgage foreclosure action.

4. Peninsula is owed the following under the terms and conditions of its Mortgage and Note:

| | | |
|---|---|---|
| a) | Principal Balance as of January 30, 1985 | $ 748,392.54 |
| b) | Accrued Interest as of January 30, 1985 | 169,635.64 |
| c) | Additional Accrued Interest at Default Rate (Late Charge) as of January 30, 1985 | 29,035.70 |
| d) | Cost and Expenses in Preserving and Maintaining the Golden Beach Property | 2,058.08 |
| e) | Real Estate Taxes and Insurance paid by Peninsula | 9,944.96 |
| f) | Reimbursement of Costs, including Attorneys' fees: | |
| | Smathers & Thompson – fee | 40,173.75 |
| | – costs | 3,940.97 |

Gregory & Adams    – fee    $ 1,806.50
               – costs    129.80
                    $1,005,117.94

g) Additional Accrued Interest    undetermined
from January 31, 1985 to date
of payment, at $415.78 per day

### Pellegrino Mortgage

1. On or about December 31, 1981, Pellegrino entered into a Deposit Receipt Contract to sell the Golden Beach Property to the debtor.

2. The closing on the Golden Beach Property took place on or about July 7, 1982 at which time, as a part of the purchase price, Pellegrino received a Promissory Note and Mortgage in the sum of $225,000.00 which was subject to the first mortgage in favor of Peninsula Federal Savings & Loan Association.

3. On July 9, 1982, the Pellegrino mortgage was properly recorded in the Dade County, Florida Official Records Book 11494 at pages 4–6.

4. The Mortgage and Note are owned and held by Pellegrino and are in default in that the debtor has permitted the first mortgage held by Peninsula to go into default and has failed to pay to Pellegrino the principal payment due on January 5, 1984 and all subsequent payments. Because of the debtor's default, Pellegrino has exercised his option to accelerate the maturity of the Mortgage and Note.

5. Pellegrino is owed the following under the terms and conditions of his Mortgage and Note:

(a) Principal Balance as of
     January 30, 1985      $ 84,375.00

(b) Accrued Interest from
     January 30, 1985      23,671.39

(c) Reimbursement of costs,
     including attorneys' fees:
     Turner, Fascell   – fee    16,762.50
                – costs    2,062.44
                   $ 126,871.33

(d) Additional Accrued Interest    undetermined
from January 31, 1985 to date
of payment, at $41.61 per day

### CONCLUSION

For the foregoing reasons, the trustee may not recover costs and expenses relative to the Golden Beach Property from the net proceeds from the sale of that property, and the trustee shall immediately distribute those proceeds in a manner consistent with this Memorandum, and

Judgment may enter accordingly.