**In re CRUTCHER CONCRETE CONSTRUCTION, Debtor.**

**Bankruptcy No. 96–35971(2)7.**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 31, 1998.

**378**

Cathy Pike, Louisville, KY, trustee.

Kathryn H. Hogan, Louisville, KY, for Ford Motor Credit Corp.

Hal Daniel Friedman, Louisville, KY, for Debtor.

## MEMORANDUM-OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is presently before this Court on the Objection of Creditor Ford Motor Credit Company ("FMCC") to Allowance of Fees and Reimbursement of Expenses by the Trustee. The Trustee seeks reimbursement of fees and expenses incurred in the Trustee's sale of three vehicles owned by the Debtor, in which FMCC had a perfected security interest. In support of its Objection, FMCC argues that under 11 U.S.C. § 506(c) the Trustee is not entitled to recover its costs and expenses, as FMCC did not benefit from the Trustee's sale of its collateral.

This Court, having fully reviewed the briefs filed by both parties, as well as the entire file, and having conducted additional research beyond the case authorities cited by the parties' briefs, finds that FMCC did not benefit by the Trustee's sale for purposes of § 506(c). Accordingly, for the reasons set forth below, this Court sustains FMCC's Objection.

### FACTS

Debtor filed its Petition in Bankruptcy in December of 1996. At that time, Debtor owned the following three vehicles: (1) a 1994 Ford pick-up truck, purchased on September 8, 1994; (2) a 1994 Ford pick-up truck, purchased on September 28, 1994; and (3) a 1996 Ford pick-up truck, purchased on June 30, 1996. Debtor financed each of these three trucks through FMCC, with FMCC perfecting a security interest in each of the respective trucks. At the time Debtor filed its bankruptcy action, it owed a balance of $7,996.75 on the 1994 truck purchased on September 8, 1994, $7,804.71 on the 1994 truck purchased on September 28, 1994, and $10,544.86 on the 1996 truck, for a total amount due to FMCC of $26,346.32.

The Trustee consulted an auctioneer who had experience selling vehicles, and was advised that an auction sale of the vehicles would likely net more than the outstanding liens owed to FMCC. Thereafter, following lengthy discussions between FMCC and the Trustee, in which FMCC voiced concern over the Trustee's proposed sale, the Trustee obtained the agreement of FMCC to sell the vehicles. Significantly, however, FMCC expressly reserved the issue of the allocation of sales expenses for a later date. Specifically, FMCC reserved its rights to object to surcharge. This agreement is memorialized by an Agreed Order signed by both parties and entered by this Court on April 2, 1997.

Thereafter, the Trustee hired Best Auctions, Inc. to sell the three vehicles at auction, and the following sales prices were received:

(1) the 1994 Ford truck purchased on September 8, 1994, was sold for $7,500.00, an amount of $496.75 below FMCC's lien amount of $7,996.75;

(2) the 1994 Ford truck purchased on September 28, 1994, was sold for $7,250.00, an amount of $554.71 below FMCC's lien amount of $7,804.71; and

(3) the 1996 Ford truck sold for $11,-000.00, an amount of $455.14 over FMCC's lien amount of $10,544.86.

For conducting the auction, Best Auctions, Inc. charged the Trustee a ten percent (10%) commission on each sale; a three percent (3%) advertising allowance for each vehicle; a $50.00 charge per vehicle for moving them to the auctioneer's place of business; and $12.00 for repairs to a 1994 truck. In addition, the Trustee was required to pay proper-

ty taxes of $485.11, which were owing on the three trucks, and $26.42 in lien release fees in order to transfer the trucks to the purchasers at auction. Thus, the costs associated with the auction and sale of these three vehicles are as follows:

(1) <u>1994 Ford truck.</u>

<u>Sales Price — $7500.00</u>

| | |
|---|---:|
| $7500.00 × 10% (auctioneer's commission) | $ 750.00 |
| $7500.00 × 3% (advertising commission) | 225.00 |
| Transportation Fee | 50.00 |
| TOTAL | $1,025.00 |

(2) <u>1994 Ford truck.</u>

<u>Sales Price — $7250.00</u>

| | |
|---|---:|
| $7250.00 × 10% (auctioneer's commission) | $ 725.00 |
| $7250.00 × 3% (advertising commission) | 217.50 |
| Transportation Fee | 50.00 |
| Repairs | 12.00 |
| TOTAL | $1,004.00 |

(3) <u>1996 Ford Truck.</u>

<u>Sales Price — $11,000.00</u>

| | |
|---|---:|
| $11,000.00 X 10% (auctioneer's commission) | $1,100.00 |
| $11,000.00 × 3% (advertising commission) | 330.00 |
| Transportation Fee | 50.00 |
| TOTAL | $1,480.00 |

(4) <u>Additional Costs</u>

| | |
|---|---:|
| Property taxes on all three vehicles | $ 485.11 |
| Lien releases | 26.42 |
| TOTAL | $ 511.53 |

The Trustee seeks reimbursement from FMCC of these fees and expenses.

FMCC admits responsibility for the $485.11 in property taxes and the $26.42 for the lien releases. However, FMCC objects to any additional surcharge, because, FMCC argues, it did not benefit from the Trustee's sale of its collateral as is required by 11 U.S.C. § 506(c) for surcharging a secured creditor with the costs of disposing of such property. FMCC asserts that not only could it have generated bids in excess of those received from the Trustee's sale, but its costs in conducting such a sale would have been lower. FMCC has filed an Affidavit by Glenn Boswell, a Customer Services Supervisor for FMCC's Louisville Branch, stating that FMCC would have auctioned the vehicles at the Nashville Auto Auction in Nashville, Tennessee for an auction fee of $65.00 per vehicle, and would have incurred a transportation cost of approximately $70.00 per vehicle. Thus, FMCC's total cost for selling *all three* vehicles would have been only $405.00, plus the property taxes and lien release charges. That amount is less than any one of the auctioneer's fee charged by *Best Auctions in connection with the sales at issue, aside from all the other additional fees charged.

Furthermore, FMCC would have been able to recoup its costs of sale from Debtor had it sold the vehicles itself. A Retail Installment Contract was executed by Debtor and FMCC in connection with the financing of each of the three vehicles. Paragraph F of each of these three Contracts states in pertinent part:

> The money used from the sale, less allowed expenses, will be used to pay the amount still owed on the contract. Allowed expenses are those paid as a direct result of having to retake the vehicle, hold it, prepare for sale and sell it.

Hence, FMCC's expenses would have been part of its allowed secured claim had it sold the vehicles itself.

### *LEGAL DISCUSSION*

The Trustee seeks to recover under § 506(c) the cost and expenses incurred in the sale of Debtor's three vehicles. Section 506(c) provides:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property *to the extent of any benefit to the holder of such claim.* (emphasis added)

Although this section permits the Trustee to recoup some costs from secured creditors, it is not without its limitations. Congress has expressly noted that "recovery is limited to the extent of any benefit to the holder" of the secured claim. H.R.Rep. No. 595, 95th

Cong., 1st Sess., at 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., at 68 (1978); *See also In re Williamson,* 94 B.R. 958, 962 (Bankr.S.D.Ohio 1988); *In re Roggio,* 49 B.R. 450, 452–53 (Bankr.D.Conn.1985); *In re Codesco, Inc.,* 18 B.R. 225, 228 (Bankr.S.D.N.Y. 1982).

■ In order for a Trustee to recover the costs and expenses incurred in the disposition of a debtor's property securing an allowed secured claim, the Trustee bears the burden of establishing that the costs and expenses were: (1) reasonable, (2) necessary, and (3) of benefit to the secured creditor. Section 506(c); *Matter of Trim–X, Inc.,* 695 F.2d 296, 299 (7th Cir.1982); *Williamson,* 94 B.R. at 962.

In the case at bar, the parties have focused their arguments on the second and third requirements, with the Trustee arguing that she is entitled to recover costs and expenses under § 506(c) because they were necessary, and FMCC disputing the Trustee's right to recover on the basis that FMCC did not benefit by the Trustee's sale. Thus, the Court will focus its discussion on those two prongs of the test. Finding that the Trustee has failed to establish that FMCC benefitted from the sale, this Court deems it unnecessary to discuss the remaining requirement that the expenses be reasonable.

### A. NECESSARY EXPENSES.

■ The Trustee argues that she is entitled to recover the costs and expenses under § 506(c), due to the fact that at the time of the sale it was determined that the three vehicles had *potential equity* for unsecured creditors. That fact supports only the "necessary expenses" requirement.

■ The "necessary expenses" requirement is based on the primary role of a Chapter 7 Trustee, which is to administer the estate. This is accomplished by "turning over to the secured creditors by appropriate action the property to which they are entitled and in which there is no equity for the estate, and to marshal for the benefit of the general creditors the maximum funds available for distribution." *In re Crisp,* 26 B.R. 274, 275 (Bankr.W.D.Ky.1982); *Williamson,* 94 B.R.

at 962; *See also Trim–X,* 695 F.2d at 301. Thus, it is only in the event that secured property "has a potential equity for general creditors or to protect that secured property that the trustee should become involved therein." *Crisp,* 26 B.R. at 275. In accordance with this policy, a Trustee may sell a debtor's property, but generally only in the event that such sale will benefit the unsecured creditors. *Williamson,* 94 B.R. at 962. Specifically, this requires on anticipation that "the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate." *Id.* (quoting *Matter of Riverside Inv. Partnership,* 674 F.2d 634, 640 (7th Cir.1982)). Otherwise, an attempt by the Trustee to sell property is deemed to be "unnecessary" under § 506(c).

In this case, the Trustee is correct that the three vehicles appeared to have potential equity at the time she made the decision to sell them. Thus, the "necessary expenses" requirement is met. The Trustee has, however, failed to establish the additional requirement that the Trustee's sale must have benefitted the secured creditor.

### B. BENEFIT TO THE SECURED CREDITOR.

■ Before the Trustee is entitled to redeem costs and expenses under § 506(c), the Trustee must satisfy the burden of proving that the secured creditor benefitted from the Trustee's Services. *In re New England Carpet Co.,* 744 F.2d 16 (2d Cir.1984); *In re Flagstaff Foodservice Corp.,* 739 F.2d 73 (2d Cir.1984); *Roggio,* 49 B.R. at 452; *In re Lambert Implement Co.,* 44 B.R. 860, 861 n. 3 (Bankr.W.D.Ky.1984). In addition, the Trustee's recovery under § 506(c) "is limited to the extent of any benefit to the holder of the secured claim." *Codesco,* 18 B.R. at 228 (citing House Report No. 95–595, 95th Cong., 1st Sess. (1977) 357; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 68, U.S.Code Cong. & Admin. News 1978, p. 5787); *See also Robertson,* 14 B.R. at 709; *Roggio,* 49 B.R. at 452–53. To demonstrate such a benefit, the Trustee must show that the secured creditor received over and above that which it could have realized without the Trustee's

intervention. *Lambert,* 44 B.R. at 861, n. 3; *Codesco,* 18 B.R. at 229; *Robertson,* 14 B.R. at 709; *Roggio,* 49 B.R. at 452–53; *Williamson,* 94 B.R. at 963–64. Accordingly, the required benefit is "usually limited to the *actual foreclosure costs saved* by the lienholder where the full satisfaction would not otherwise have been realized because the secured claim exceeded the value of the encumbered property." *Codesco,* 18 B.R. at 229 emphasis added; *Williamson,* 94 B.R. at 964; *Robertson,* 14 B.R. at 709.

In this case, the Trustee has failed to establish that FMCC has received anything over and above that which it could have realized without the Trustee's intervention. This is true for all three of the sales at issue. In fact, the evidence raises at least a question as to whether FMCC might have obtained higher bids for the three trucks, if it had sold the trucks on its own. It is undisputed that both parties anticipated that an auction of the trucks would net more than the outstanding liens. Yet, these expectations were simply not realized by the Trustee's auction. The two 1994 trucks sold for $496.75 and $554.71, respectively, less than FMCC's outstanding liens. While the 1996 truck sold for $455.14 above FMCC's lien, the costs associated with that sale exceeded $1,480.00.

Furthermore, the Trustee has failed to establish that she saved FMCC anything in the way of costs associated with these sales. In fact, it appears that the auction costs for the three trucks were greatly in excess of the costs FMCC would have incurred had it conducted the sale. The auction costs incurred by the Trustee were as follows: (1) $1,025.00 for the first 1994 truck; (2) $1,004.50 for the second 1994 truck; (3) $1,480.00 for the 1996 truck; and (4) $511.53 for the property taxes and lien releases attributable to all three vehicles. In comparison, FMCC has provided evidence by means of a sworn affidavit that its total cost for selling all three vehicles would have been $405.00 plus the $511.53 for property taxes and lien releases.

Additionally, FMCC could have recouped these costs of sale had it sold the vehicles itself, pursuant to the terms of the relevant Retail Installment Contracts. This factor has been given considerable weight by courts faced with the issue of whether a secured creditor benefitted from the Trustee's sale of its collateral, for purposes in § 506(c). *See Robertson,* 14 B.R. at 709; *Williamson,* 94 B.R. at 964.

In *Robertson,* the Court held that the secured creditor had not received a benefit for purposes of § 506(c) where the secured creditor would not only "have ultimately realized full satisfaction of its claim without the intervention of the Trustee," but would also have been able to recover its foreclosure costs had it foreclosed. 14 B.R. at 709.

In *Williamson,* the Court likewise held that the Trustee had failed to establish that the secured creditor had benefitted from the Trustee's sale of property, for purposes of § 506(c). In that case, the evidence suggested that the secured creditor would have fully recovered the outstanding balance on the debt owed to it without the Trustee's intervention. 94 B.R. at 964. Additionally, the Court emphasized that the secured creditor would have been entitled to reimbursement of the costs of foreclosure proceedings had it foreclosed upon the property itself. *Id.*

Accordingly, under the facts and circumstances of the case at bar, this Court finds that the Trustee has failed to establish that FMCC benefitted within the meaning of § 506(c) from the Trustee's sale of the three vehicles. Thus, the Trustee is not entitled to recover from FMCC the costs associated with the sale of those vehicles.

### CONCLUSION

For the above stated reasons, this Court by separate Order sustains the Objection of Ford Motor Credit Company to Allowance of Fees and Reimbursement of Expenses by the Trustee.