**In re TIC MEMPHIS RI 13, LLC, Debtor.**

No. 12–29322.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Jan. 10, 2013.

L. John N. Bird, Jeffrey M. Schlerf, Eric Michael Sutty, Fox Rothschild LLP, Wilmington, DE, Henry C. Shelton, III, Adams and Reese, Memphis, TN, for Debtor.

Carrie Ann Rohrscheib, Office of the United States Trustee, Memphis, TN, for U.S. Trustee.

## MEMORANDUM AND ORDER REGARDING THE DEBTOR'S "MOTION TO SURCHARGE SALES PROCEEDS PURSUANT TO BANKRUPTCY CODE SECTION 506(c)" COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

The instant core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) arises out of a contested matter governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure regarding a "Motion to Surcharge Sales Proceeds Pursuant to Bankruptcy Code Section 506(c)" filed by the above-named Debtor in possession, TIC Memphis RI 13, LLC, ("Debtor"), on December 8, 2012. This motion is brought on behalf of Business Debt Solutions ("Business Capital"), Fox Rothschild, LLP, and Adams and Reese, LLP, (collectively, the three entities are referred to as the "Debtor's professionals") [1]. 110 Monroe Avenue Holdings, LLC, ("Holder") filed a timely objection to the § 506(c) motion on December 26, 2012.

The narrow and ultimate issue before the court is whether the Debtor's bankruptcy court authorized professionals should be allowed to surcharge sales proceeds resulting from a § 363 sale where the Holder is not fully secured by those sales proceeds but has a valid security interest in the entire sale proceeds. After considering the entire case record as a whole, the following shall constitute the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The relevant background facts may be briefly stated as follows. Debtor held an undivided 24.10866% tenant in common interest in a ground lease with the Memphis Center City Revenue Finance Corporation. The ground lease includes a 12 story, 90 room hotel located in downtown Memphis, Tennessee. The hotel is operated by a third party as a Residence Inn pursuant to a relicensing franchise agreement by and between the Master Tenant and the Marriott International, Inc. Essentially, the Debtor is a single asset entity having the 24.108665% tenant in common interest referred to above. This project was leased by the Debtor and 15 other non-debtor holders of tenant in common interests. The ground lease contractually matures on December 31, 2024, with an option to renew for an additional 11 years.

Due to financial distress and to stop a scheduled and imminent non-judicial foreclosure sale, on June 14, 2012, the Debtor filed an original chapter 11 petition in the Bankruptcy Court for the District of Delaware. On June 25, 2012, Fox Rothschild, LLP filed an application to be employed as the Debtor's attorney, which was later authorized in an order entered on July 10, 2012. Also on June 25, 2012, Holder filed a motion to dismiss this case in the Delaware bankruptcy court under § 1112(b) of the Bankruptcy Code and, also, filed a motion to transfer the venue of this chapter 11 case from the District of Delaware to the Western District of Tennessee bankruptcy court under 28 U.S.C. § 1412 and Fed. R. Bankr.P. 1014(a)(1). Holder asserted approximately a $10 million plus secured claim against the hotel.

On July 9, 2012, the Debtor filed an "Application to Employ/Retain Business Debt Solutions, Inc. as Investment Bank-

---

1. Each of the Debtor's professionals made application/"petition" for fees and reimbursement of expenses in this chapter 11 case and each application/"petition" had related objections filed thereto. The contested application/"petitions" and related objections are concurrently dealt with in a separate order being issued in association with this instant Memorandum, Order, and Notice. This instant Memorandum, Order, and Notice addresses only docket entry numbers 118 and 137.

er." Prior to bankruptcy on May, 30, 2012, Business Debt Solutions, Inc. ("Business Capital"), entered into a financing agreement with the Debtor to engage Business Capital to obtain financing. The financing agreement provided Business Capital an "Underwriting Fee" of $15,000 payable upon execution of the agreement and a "Financing Fee" also known as a "Success Fee" equal to 3% of the total amount of the obtained financing.

Later, the Debtor and Holder entered into a "Stipulation Term Sheet" that was approved by the Delaware bankruptcy court on July 20, 2012. This Stipulation Term Sheet required the Debtor to file a motion to sell the project by September, 10, 2012 and also required the Debtor to provide a letter of intent by August 31, 2012 (timing was later modified/extended by consent). On July 23, 2012, the parties consented to the transfer of this chapter 11 case under 28 U.S.C. § 1412 and Fed. R. Bankr.P. 1014 from the District of Delaware to the Western District of Tennessee to be effective on August 31, 2012. In addition, the Delaware bankruptcy court entered an order authorizing the employment and retention of Business Debt Solution, Inc., more specifically Mr. Robert Burrick, as an investment banker for the Debtor.

On September 4, 2012, the case was transferred to the Western District of Tennessee, and, shortly thereafter on September 10, 2012, the Debtor made application to employ Adams and Reese, LLP as Counsel for Special Purpose to represent the Debtor in seeking a § 363 sale of the hotel in the Western District of Tennessee. An order was entered authorizing the employment of Adams and Reese, LLP on September 13, 2012.

On September 10, 2012, the Debtor also filed a Motion for Sale of Property under § 363(b). Subject to various objections, amendments, and bid procedures, the Debtor's "Amended Motion for Order Authorizing and Approving the Sale of Property by Action" was approved by the court on November 28, 2012. This order approved Wright Investments, LLC, as the highest bidder at the auction, to purchase the hotel with a $7.2 million cash offer. The sale was free and clear of all encumbrances. This sales price was substantially less than the Holder's asserted secured claim of over $10 million. Holder's encumbrances against the property sold additionally transferred to the cash proceeds resulting from the sale.

Holder's valid secured claim covers *all* assets of the Debtor. As the cash proceeds are the only remaining property of the chapter 11 estate, Holder is undersecured and, as a result thereof, the estate is administratively insolvent. After becoming aware of this insolvency, the Debtor filed the instant "Motion to Surcharge Sales Proceeds Pursuant to Bankruptcy Code Section 506(c)" ("Surcharge Motion") on December 8, 2012. In essence, this motion seeks to pay the Debtor's professionals from the cash proceeds of the sale. Unsurprisingly, the Holder objected to this Surcharge Motion on December 26, 2012. A final hearing was held on January 4, 2013, and Mr. Burrick provided oral testimony as the only witness.

## § 506(c) Analysis

Section 506(c) allows the trustee or debtor in possession to recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of such property to the extent of any benefit to the holder of such claim. The trustee or debtor in possession must prove, among other things, that the secured creditor directly benefited from the expenditure; "a debtor [in possession] does not meet this burden of proof by suggesting possible or hypothetical benefits." *In re Flagstaff*

*Foodservice Corp.,* 762 F.2d 10 (2nd Cir. 1985). Absent consent by the secured creditor, fees and costs against the secured creditor's collateral ordinarily cannot be paid unless the trustee or the debtor in possession proves they are reasonable, necessary, and directly benefit the secured creditor. *See, for example, In re Ferncrest Court Partners, Ltd.,* 66 F.3d 778 (6th Cir.1995); *In re Flagstaff Foodservice Corp.,* 739 F.2d 73 (2nd Cir.1984). To demonstrate such a benefit, the debtor in possession must show that its actions caused the secured creditor to realize over and above what it would have realized without the debtor in possession's intervention. *In re Crutcher Concrete Const.,* 218 B.R. 376, 380–381 (Bankr.W.D.Ky. 1998) (*citing in re Lambert Implement Co.* 44 B.R. 860, 861 n. 3 (Bankr.W.D.Ky. 1984)).

█ This court now will analyze the facts and circumstances of this case to determine if the actions by the Debtor and Debtor's professionals can be characterized as 1) necessary, 2) reasonable, and 3) having provided a benefit to the secured creditor, as contemplated under § 506(c).

First, the Debtor must demonstrate that its professionals' actions were necessary. Debtor alleges that the entire bankruptcy process was necessary because it provided an opportunity to achieve the highest and best sales price for the Holder's collateral. Specifically, it further alleges the bankruptcy processes allowed the various TIC interests to be bundled and sold free and clear of all encumbrances, which Holder could not have done on its own outside of bankruptcy. Holder does not agree and indicates that from the beginning it has sought to dismiss the case and has raised numerous objections to practically every motion or application that the Debtor has made. Holder alleges that absent bankruptcy it could have foreclosed on the property in June, 2012, at its scheduled foreclosure sale instead of waiting for the § 363 sale to take place in December, 2012. It alleges a similar sale of the Debtor's single asset could have been successfully accomplished absent the costs and process of a bankruptcy filing, § 363 sale, and various objections, etc.

The court finds under the particular facts and totality of the circumstances and applicable law that the actions of the Debtor were not sufficiently necessary as contemplated under § 506(c) because, in reality, the bankruptcy case served no purpose other than to provide an opportunity to obtain the highest bid possible and to dispose of the Holder's collateral, which could have been done absent a chapter 11 bankruptcy case in a chapter 7 case or through a non-judicial foreclosure sale under applicable state law. Remedies exist outside of a chapter 11 case for disposition of single assets like the hotel in this case. In this situation, the Holder pursued those remedies by beginning a non-judicial foreclosure; however, the Holder's efforts to foreclose were automatically stayed upon the filing of the chapter 11 petition and the imposition of the statutory stay under § 362(a). Eleven days after the filing of the chapter 11 petition, the Holder moved to dismiss the chapter 11 case and transfer the case venue from the District of Delaware to the Western District of Tennessee. After hearings and negotiations before the Delaware bankruptcy court, the Debtor and Holder entered into a Stipulation Term Sheet that, among other things, allowed (and required) the Debtor to file a § 363 sale motion that would "pay the Holder the Payoff Amount *in full* " (emphasis added). At the time of the Stipulation Term Sheet, the payoff amount was $10,146,652.91. After establishing bid procedures and holding an auction after this court resolved the Holder's objection, a final sales price of $7.2 million was obtained. The Holder opted not to credit bid

under § 363(k) at the auction. The sales price left the estate insolvent, as the Holder could not be paid off in full in accordance with the Stipulation Term Sheet. Notwithstanding the bid procedures and auction, the Debtor was unsuccessful in obtaining a bid that was sufficient to payoff the secured creditor and make the estate administratively solvent.

Here, the Debtor voluntarily elected to file a chapter 11 case and ultimately sought to sell the single asset at an auction in order to obtain what it hoped to be the highest and best price for the hotel. Chapter 11 allows the debtor in possession an exclusive period to formulate and file a plan and essentially control how the property of the estate is preserved or disposed. An independent, stand alone sale motion under § 363 also is statutorily permissible. This is a substantial privilege given to chapter 11 trustees and debtors in possession in chapter 11 cases that does not exist in a chapter 7 context or in a non-judicial foreclosure context. Here, the Debtor and its professionals exercised their business judgment that utilizing the chapter 11 privileges would best protect the § 541 estate and would also protect the interests of Holder, if successful. Under the circumstances, this was a risky proposition by the Debtor because at no time did the Holder consent to the actions of the Debtor and the Debtor knew that the collateral, the hotel, was undersecured. Debtors may use the bankruptcy system to attempt to sell a single asset; however, such use should not come at the expense of an objecting secured creditor, who is the highest priority lienholder on the single asset and is undersecured by that single asset. Had the Debtor filed for chapter 11 relief and sold the asset for more than the payoff amount, the Debtor and its professionals would have reaped the benefit. However, the Debtor cannot avoid the dire consequences of its gamble when that gamble loses. Here, the Debtor and the Debtor's professionals, no doubt, incurred significant fees and expenses seeking to sell the Debtor's single business asset at an auction. The auction resulted in a bid significantly below the payoff amount and the amount set forth in the Stipulation Term Sheet. No funds were generated to pay administrative expenses (*e.g.*, professional fees and expenses) or allow the debtor to reap the benefit of its gamble.

In hindsight, the better business judgment might have been to allow the Holder to foreclose on the single business asset or pursue another course of action, but the Debtor was not privy to hindsight at the time it filed the chapter 11 petition. Debtor made a last ditch effort via the use of highly competent and highly experienced professionals to obtain a sales price that would cover its obligations to the Holder so to avoid the consequences that would result from a deficiency. If foreclosure had occurred, the Holder not the Debtor would have incurred the costs to sell the asset, if it chose to sell the asset at all. These costs plus the payoff amount would become a deficiency balance that could be enforced against the Debtor or potentially against any guarantors associated with the Debtor. If a chapter 11 case indeed had been necessary to dispose of this single asset, the Holder and other creditors of the Debtor could have filed an involuntary chapter 11 case or simply consented to the instant chapter 11 case. It did neither, and, in its own business judgment, the Holder sought first a non-judicial foreclosure and then aggressively contested the instant chapter 11 case, only acquiescing to the final auction result under § 363.

▉ The court finds, for an action to be necessary under § 506(c), the action must be required to preserve or dispose of the property securing the debt. Where actions are elective and forgo other viable actions and options, such actions are not,

ipso facto, by nature necessary. Under the particular facts and circumstances of this case, seeking to sell a single asset by means of a § 363 sale in a chapter 11 case was not a necessary action to preserve or dispose of the property securing Holder's debts because other remedies existed. Debtor sought chapter 11 protections for voluntary and elective reasons of disposing of the single asset in a self-beneficial manner rather than out of necessity. For these reasons alone, the Holder's collateral cannot be surcharged for the Debtor's professional fees and expenses that are sought here; however, the court also will address the other two elements of § 506(c) to provide a complete record of the court's findings of fact and conclusions of law.

Under the second § 506(c) element, the Debtor must demonstrate that its professionals' actions were reasonable under the circumstances. As discussed above, the Debtor sought bankruptcy protections in a gamble to try and obtain a sales price for its single asset that would cover the payoff amount to the Holder. It utilized the Chapter 11 privileges given to debtors that do not exist in a chapter 7 context or in a non-judicial foreclosure context. At the time of the filing of the chapter 11 petition, the actions of the Debtor appear to be a reasonable last-ditch effort to stop a scheduled and imminent foreclosure and protect its own interests in the single asset, which in turn would concomitantly protect the interests of Holder.

█ Reasonableness is not judged in hindsight, but rather at the time the business judgment is exercised. At the time the Debtor and Debtor's professionals acted, their actions were reasonable attempts to preserve the property securing the Holder's debt and to obtain the highest purchase price possible. Had they been successful at obtaining a sales price that exceeded the payoff amount, there would have been no need to surcharge the Hold-

er's collateral and no deficiency on the Holder's debts would exist. The court finds under the circumstances that this was a reasonable objective exercised by highly qualified professionals and, therefore, a reasonable action for the debtor in possession to take in an attempt to dispose of the single asset securing Holder's debts and achieve a maximization of the value of the hotel. However, reasonableness in and of itself does not infer necessity, as one can have reasonable elective actions just as one can have reasonable necessary actions. Here, the Debtor acted reasonably in electing to use the privileges afforded by a chapter 11 case, but the Debtor did not act out of necessity as other means of disposing of the single asset were readily available.

█ Where the reasonableness element looks forward, the best interest of secured creditor element looks in hindsight. Section 506(c) limits recovery against property securing an allowed claim "to the extent of any benefit to the holder of such claim." Accordingly, if reasonable and necessary actions do not provide a benefit at the end of the action, the trustee or debtor in possession cannot recover under § 506(c). These benefits must be direct and not speculative, hypothetical, or unascertainable. Here, the secured creditor did receive a benefit from the actions of the Debtor's professionals because the property securing its debts was liquidated for $7.2 million. However, there is much speculation as to whether this benefit was the best result under the particular facts and circumstances and whether the costs of the chapter 11 case to the Holder outweighed any benefit it received. Would the secured creditor have benefited more in a chapter 7 case or under a non-judicial foreclosure? The court is not called to speculate under these other circumstances as to whether Holder would have benefited more or less and what costs the Holder or

the Debtor would have occurred, as those would be merely hypothetical and unascertainable costs. What is clear from the facts is that the Holder incurred significant costs and delays litigating throughout this chapter 11 case that would not have been incurred absent the bankruptcy filing. What is further clear is that other options existed beyond a § 363 sale in a chapter 11 case. Surcharging the Holder's cash collateral for and with the Debtor's professional fees and expenses at this point and under these circumstances would only be a hypothetical balancing act between the § 363 sale price, a hypothetical foreclosure sales price, the fees and expenses incurred by Holder in this bankruptcy case, the hypothetical fees and expenses that would have been incurred in a hypothetical foreclosure, and the fees and expenses incurred by the Debtor's professionals. The court believes such a tenuous and speculative balancing act was not the intended purpose of a § 506(c) analysis. Rather § 506(c) has typically been used to surcharge the secured creditors' collateral in situations where imminent loss was certain to result and actions were necessary to preserve or dispose of the asset to maintain the value for the secured creditor. In theory, the actions here should be the same actions or substantially similar actions that the secured creditor would take if it had possession of the property rather than the estate having possession. Where the secured creditor in hindsight would not seek the same or substantially similar benefit if placed in the same position of the trustee or debtor in possession, the court is hard pressed to find that a benefit for the secured creditor resulted. In the instant case, Holder has constantly emphasized through oral statement, written objection, and its own motion to dismiss that it saw the bankruptcy process as a detriment and not a benefit. The court finds that the Debtor and the Debtor's professionals have not carried the high burden of proving that a direct, quantifiable benefit has been bestowed upon the Holder that would warrant Holder's collateral being surcharged under § 506(c).

In conclusion, the court finds, under the totality of the circumstances and given the particular facts of this case, the actions of the Debtor and Debtor's professionals were somewhat reasonable but neither necessary nor provided a direct and quantifiable benefit to the Holder. As the Debtor has not carried its burden of proof regarding all three elements of a § 506(c) surcharge, the court has no choice but to deny the Debtor's Surcharge Motion. The court is not unmindful and understands this ruling results in a harsh outcome for the Debtor's professionals, as they dutifully performed their jobs; however, surcharging the Holder's collateral under the existing circumstances when the law and circumstances clearly do not allow it under § 506(c) perhaps would have been harsher.

Based on the foregoing and considering the case record as a whole, IT IS ORDERED AND NOTICE IS HEREBY GIVEN THAT:

1) Debtor's § 506(c) Surcharge Motion on behalf of Business Capital, Fox Rothschild, LLP, and Adams and Reese, LLP, is denied;

2) The § 363 sale proceeds that are Holder's cash collateral shall NOT be used to pay the compensation, fees, and expenses of Business Capital, Fox Rothschild, LLP, and Adams and Reese, LLP; and

3) The Bankruptcy Court Clerk shall cause a copy of this Order, Memorandum, and Notice to be sent to the following:

L. John N. Bird, Esquire                    TIC Memphis RI 13, LLC

Fox Rothschild, LLP
919 North Market St., 16th Floor
Wilmington, DE 19801
Eric Michael Sutty, Esquire
Fox Rothschild, LLP
Citizens Bank Center, Suite 1300
919 North Market Street
P.O. Box 2323
Wilmington, DE 19899

Jeffrey M. Schlerf, Esquire
Fox Rothschild, LLP
919 N. Market St., Suite 1600
Wilmington, DE 19899
Henry C. Shelton, III, Esquire
Adams and Reese, LLP
80 Monroe Avenue, Suite 700
Brinkley Plaza
Memphis, TN 38103

Carrie Ann Rohrscheib, Esquire
Office of United States Trustee for Region 8
200 Jefferson Ave., Ste. 400
Memphis, TN 38103

c/o Randy R. Hanson
5555 N. Riley St.
Las Vegas, NV 89149
Timothy M. Lupinacci, Esquire
Attorney for Holder
420 North 20th Street
1600 Wells Fargo Tower
Birmingham, AL 35203

R. Spencer Clift, III, Esquire, and
Erno Lindner, Esquire
Attorneys for Holder
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Bruce M. Kahn, Esquire,
Marshall W. Criss, Esquire, and
John R. Dunlap, Esuire
Attorneys for TIC Borrowers and
Moody Interests
6070 Poplar Avenue, Suite 600
Memphis, TN 38119